## A. M. SMITH v. THE STATE.

### No. 5729.  Decided April 14, 1920.

**1.—Mutilating and Destroying Documents, Papers, etc.—Indictment—Statutes Construed.**

The destruction of certain answers in writing to certain questions prepared by the Superintendent of Public Instruction which were required by law to be kept by an officer within this State are comprehended in the terms of Article 943, Vernon's Penal Code, and when delivered to an employee of said State Superintendent the same were thereafter in said officer's keeping and the destruction of same was an offense under said article, and the allegation in the indictment substantially following the language of said Article is sufficient.

**2.—Same—Indictment—Pleading—Surplusage.**

Where defendant objected to the indictment that it failed to allege what changes, etc., were made and that this was necessary, but the record showed the actual destruction of said papers and simply alleged conjunctively all the various methods of committing the offense, the allegation of other methods of violating such statute may be treated as surplusage, and the pleading was sufficient.

**3.—Same—Rules Stated—Pleading.**

There is nothing in the objection that the various ways of committing the offense, to wit, changing, mutilating. destroying, etc., which was set out conjunctively, are repugnant and therefore self-destructive, as this is the approved method of pleading under a statute of this kind.

**4.—Same—Accomplice—Corroboration—Insufficiency of the Evidence.**

Where, upon trial of willfully and maliciously destroying, etc., certain papers, etc., kept by an officer within this State, the main State's witness was not corroborated in his testimony by any of the other State's witnesses as to any incriminating facts, the conviction could not be sustained.

Appeal from the District Court of Burleson.  Tried below before the Honorable R. J. Alexander.

Appeal from the conviction of maliciously destroying certain written answers within the control of the State Superintendent of Public Instruction.  Penalty: two years imprisonment in the penitentiary.

The opinion states the case.

*Jesse Garrett* and *W. M. Hilliard,* for the appellant.—On question of insufficiency of indictment: State v. Brocker, 32 Texas, 614; Parshall v. State, 62 Texas Crim. Rep., 177.

On question of accomplice's testimony: Jones v. State, 59 Texas Crim Rep., 559; Smith v. State, 22 Texas Crim. App., 196; Leeper v. State, 29 id., 158; Cohea v. State, 11 id., 622; Renner v. State, 65 S. W. Rep., 1102; Jordan v. State, 128 S. W. Rep., 140.

*Alvin M. Owsley,* Assistant Attorney General for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Burleson County, for a violation of the offense described in Article 943, Vernon's Penal Code, which article reads as follows: "If any person, without authority of law, shall wilfully and maliciously change, alter, mutilate, destroy, deface or injure any book, papers, record or any other document, required or permitted by law to be kept by any officer within this State, he shall be deemed guilty of a felony, and, on conviction, shall be punished by a fine not exceeding five thousand dollars, or by imprisonment in the penitentiary not less than one nor more than five years."

The facts, as shown by the record, make it appear that a colored summer normal school for teachers, was held in Caldwell, Burleson County, during the summer of 1919, at the close of which there was an examination of applicants for teachers' certificates; that as a part of said examination, the written answers of the applicants for such certificates, were forwarded from Caldwell, Burleson County, to the office of the State Superintendent of Public Instruction, at Austin, Texas, where said papers were to be kept, and later delivered to the State Board of Examiners, by whom the same would be graded, the proper certificates awarded, and the examination thus concluded. It was shown that after the answers had been made in writing, they were placed in a box by an employe of the State Superintendent, by whom said box was delivered to an expressman for forwarding, as aforesaid. This expressman admitted upon the trial that he had been corrupted by the colored conductor of said Normal School, and that in pursuance of an agreement with said conductor, and for a consideration, he took said box to the house of said conductor, and there left it for some hours before taking the same to the office of the express company. This man, whose name was Ahrens, stated that when he returned to the house of Bryant, who was the colored conductor of said normal, for said box, that the wife of said Bryant, told him they were not quite ready, and witness stated that he waited at said house for a while, during which time of waiting, appellant went from said house to a barn, and while doing so, called to witness Ahrens, saying, in substance, that it would be ready in a few minutes. Shortly thereafter, said box was brought out, taken to the station, and forwarded to Austin; and upon examination after de-

livery, it was found that a number of answers of said applicant had been extracted, and other papers purporting to contain such answers, had been substituted. It is made apparent from the record that a number of indictments resulted, all of same being brought under the provisions of Article 943.

A number of objections were urged to the indictment, among them being an objection that the documents mentioned were not such as come within the provisions of said Article 943. It will be apparent from an examination of said article, as above set out, that the documents referred to must fall within the definition of those "required or permitted by law to be kept by any officer within this State." If the written answers of applicants for teachers' certificates constituted such documents, the prosecution can be maintained; otherwise, same will necessarily fail.

Examining the various statutes prescribing the duties of the different persons connected with the holding of examinations of applicants for teachers' certificates, it is found that said enactments require such written answers to be forwarded to the State Superintendent of Education, and that same shall be kept by said State Superintendent until delivered to the State Board of Examiners when they meet to examine and grade such papers. We are not clear as to whether this is the character of keeping documents, etc., that was intended by the framers of Article 943, but giving to the scope of such statute every reasonable intendment, we have concluded that inasmuch as said answers must be kept by the State Superintendent for a period of time, that this would be within the comprehension of the terms of said Article 943; we further think that when said papers were delivered to an employe of said State Superintendent at Caldwell, the same was thereafter in the keeping of the said State Superintendent.

It is also urged against said indictment, that same sets out that appellant changed, altered, mutilated, destroyed, defaced, and injured the paper, etc., to-wit, the answers of Miss T. A. Smoots to said questions, and that it is nowhere alleged in said indictment what changes, etc., were made, and that this should have been done. We think this objection to the indictment would be good if the State relied for a conviction upon proof of any character of change, mutilation, etc., falling short of the actual destruction of the instrument, but as we understand the record, the State, while alleging conjunctively all the various methods of committing the offense, which are named in the statute, relies only on the theory of the destruction of said documents and the allegations of other methods of violating said statute may be treated as surplusage. In such case, we think the allegation of destruction sufficient, without setting out how said document was destroyed.

There is nothing in the objection as made, that the various ways of committing the offense, to-wit: changing, mutilating, destroying, etc., which were set out conjunctively, are repugnant, and, therefore, self-destructive. It is the approved practice to allege the various methods

of committing an offense conjunctively. See Section 907, Branch's Criminal Law, and authorities.

This case must be reversed for the insufficiency of the corroboration of the witness Ahrens, the expressman, who testified that he saw appellant at the residence of Bryant, and as to what appellant there stated to him. We have carefully examined this record; have read through the testimony of each of the five State witnesses, and find that no other person save Ahrens, testified to a single criminative fact tending to connect appellant with the commission of the offense, if any. Two of the witnesses were employes of the Educational Department, and neither of them testified to anything with reference to appellant in any way. Witness Grizzard was a local printer, who testified to having printed two sets of papers for Bryant, the colored director of said normal, one of said sets being printed before the normal began, and the other about the time of its close, but said witness testified, upon being shown the substituted answers of T. A. Smoots, that the same appeared to be on the first paper printed by him.

The witness Hensley was the only witness who testified to anything relative to appellant, and he merely stated that appellant told him he was a married man, and that he boarded at the house of Bryant. These facts are no corroboration of the testimony of the witness Ahrens, as to any criminating facts, and do not tend to connect appellant with the offense.

For the lack of sufficient legal corroboration of the testimony of the accomplice, the case must be reversed, and it is so ordered.

*Reversed and remanded.*