**CONSTRUCTORS UNLIMITED INC., Appellant,**

v.

**The STATE of Texas, Appellee.**

**William J. SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–85–0690–CR to 01–85–0694–CR, 01–85–0686–CR to 01–85–0689–CR and 01–86–0712–CR.**

Court of Appeals of Texas, Houston (1st Dist.)

Aug. 28, 1986.

Stanley G. Schneider, Houston, for Constructors Unlimited, Inc.

John B. Holmes, Jr., Harris County Dist. Atty., Winston E. Cochran, Jr., Casey O'Brien, Harris County Asst. Dist. Attys., Houston, for State.

Before COHEN, DUNN and SAM BASS, JJ.

OPINION

COHEN, Justice.

In a joint trial, Constructors and Smith were each found guilty upon five indictments for tampering with a governmental record, a third degree felony offense, Tex. Penal Code Ann. sec. 37.10 (Vernon 1974). The jury assessed punishment against Constructors of a $20,000 fine in each case and against Smith at imprisonment for 10 years, probated, and a $5,000 fine in each case.

We hold that the evidence is insufficient to show that appellants made false entries in government records, because the documents involved were not government records when the false entries were made.

On May 16, 1983, Constructors Unlimited, Inc. and the University of Texas signed an approximately $2.1 million contract for work on a building in Houston. Constructors was the general contractor, and Smith was its president. The parties agreed that Constructors would submit a monthly form, signed under oath by a corporate agent, as a pre-requisite to being paid. These forms, called "Contractor's Esti-

mate[s]", are the basis for these prosecutions. Each was signed by Smith, as president of Constructors. Each shows the respective amounts due Constructors on the contract for work done during August, September, October, November, and December of 1983. Smith and Constructors were each charged by separate indictment with having made false entries in these forms for each month of the five month period.

The indictment against Smith in cause no. 1–85–712–CR (trial court no. 425,453) is representative and is reproduced below:

CAUSE NO: 425453

FILED: MAY 21, 1985

THE STATE OF TEXAS
VS.

REV. 5/80

William J. Smith    SPN:
18212 Heritage Lane    DOB. WM 6-23-30
Houston, Texas
ELONY CHARGE.

False Entry Govt REcord    3
AUSE NO.: 425 453
ARRIS COUNTY DISTRICT COURT NO.: 209th D.C.

DATE PREPARED 5-17-85 BY AG DA NO. 096
AGENCY: HCDA    O/R NO.: 84-367
NCIC CODE 4804 34    ARREST DATE.
RELATED CASES.

BAIL $ 2,000.00
PRIOR CAUSE NO.: reind 415889

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS.

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas,

WILLIAM J. SMITH

hereafter styled the Defendant, heretofore on or about   October 31, 1983  , did
then and there unlawfully

and with intent to defraud and harm another, knowingly, make
a false entry in the government record duplicated below:

## THE UNIVERSITY OF TEXAS
### Contractor's Estimate

PERIODICAL ESTIMATE FOR PARTIAL PAYMENT NO. Six (6).    703-459

FOR THE PERIOD: October 1, 1983    To   October 31, 1983   Inclusive.

NAME OF PROJECT: UTCC Additional Outpatient Clinic – Phase I – Electrical Transformer Vault
CONTRACTOR: CONSTRUCTORS UNLIMITED, INC.    For   General Construction   work.

TO BE FILLED IN BY THE CONTRACTOR

Amount of Contract . . . . . . . $2,098,778.50
Approved Extras . . . . . . . . $
Total . . . . . . . . . . . . . $2,098,778.00
Accepted Deductions . . . . . . $
Total . . . . . . . . . . . . . $2,098,778.00
Previously Paid . . . . . . . . $ 467,727.00
Balance . . . . . . . . . . . . $1,631,051.00
THIS CERTIFICATE . . . . . . . $ 97,565.00
Balance . . . . . . . . . . . . $1,533,486.00

INSURANCE AFFIDAVIT:
I, the Contractor, do hereby certify that all insurance as required by law and by the specifications is in full force and effect.

LIENS AND LIABILITY:
I, the Contractor, do furthermore certify that all current invoices and obligations have been paid in full, and there are no liens or liabilities against this contract.

W. J. Smith, President    10-31-83

STATE OF TEXAS
COUNTY OF Harris } Personally before me, the undersigned authority, this day appeared W. J. Smith, President of Constructors Unlimited, Inc.

who being by me duly sworn, on his oath says that the account hereto attached, for $ 97,565.00

in favor of Constructors Unlimited, Inc. and against THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS, is within the knowledge of affiant, just, true, and correct; that it is due and that all just and lawful offsets, payments, and credits have been allowed.

Sworn to and Subscribed before me,
this ___ day of Oct ___ 83

JOHN A. POsdOS
Notary Public, State of Texas
My Commission Expires July 30, 1986

W. J. Smith, President

Notary Public ___ County, Texas

AGAINST THE PEA

TO BE FILLED IN BY THE CONSTRUCTION INSPECTOR

Inspected and approved 5 DEC 83   By Daniel C. Barker

### CERTIFICATE

TO THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS, AUSTIN, TEXAS.

THIS IS TO CERTIFY THAT CONSTRUCTORS UNLIMITED, INC. CONTRACTOR FOR
UTCC Additional Outpatient Clinic – Phase I – Electrical Transformer Vault IS ENTITLED TO

PAYMENT OF THIS CERTIFICATE IN THE AMOUNT OF: ($ 97,565.00 )
Ninety-Seven Thousand Five Hundred Sixty-Five Dollars and no/100

PERCE GUGGLIN ALEXANDER

Date By Leuin Rlator 10 Nov 2

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Jack T. Redding

FOREMAN OF THE GRAND JURY

The other indictments against Smith are identical, except that the form attached is for a different month and contains different numbers and dates. The indictments against Constructors are identical to those against Smith, except for the defendant's name.

The State argues that Smith and Constructors violated the law by falsely swearing that "all current invoices and obligations have been paid in full."

John Forgos, a former officer of Constructors, testified that some sub-contractors were not paid regularly during this time period and that Smith knew this. Forgos denied that he or Smith intended to defraud anyone, claiming that it was routine practice in the industry, as evidenced by contracts with the sub-contractors on this project, that sub-contractors and suppliers would not be paid until the general contractor (Constructors) was paid. He testified that all sub-contracts had retainage clauses, as did Constructors' contract with the University. Thus, because of these retainage agreements, there would always be a debt owed by the University to Constructors and by Constructors to its sub-contractors, but that debt was not due until the completion of the entire contract.

Several sub-contractors and suppliers testified that they had not been fully paid by the time of trial for invoices submitted during August through December of 1983. These and others, some of whom had been fully paid, testified that they had waited from 45 days to 18 months or more to be paid for invoices submitted to Constructors during this period.

Appellants contend in their third ground of error that the evidence is insufficient, because there is a fatal variance between what was alleged and what was proved. They argue that the indictment alleged an offense under Penal Code section 37.-10(a)(1), but that the State failed to prove that offense and has, at most, proved the different offense set out in section 37.-10(a)(2), an offense not alleged in these indictments.

Penal Code section 37.10 provides:

"(a) A person commits an offense if he:
(1) knowingly makes a false entry in, or false alteration of, a governmental record;
(2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record; ..."

These indictments alleged only the first alternative. Appellants contend that they cannot be found guilty of making a false entry in a governmental record, because the entries were made on the forms before they became government records.

The term "governmental record" is defined in Tex.Penal Code Ann. section 37.01 (Vernon 1974), as follows:

"In this chapter: (1) "governmental record" means anything:
(A) belonging to, received by, or kept by government for information; or
(B) required by law to be kept by others for information of government.

The State does not argue that the documents signed by Smith were "required by law to be kept by others for information of government." Thus, in order for this verdict to be upheld, the "Contractor's Estimate" must be something "belonging to, received by, or kept by a government for information".

It is undisputed that when Smith executed the "contractor's estimates", those documents did not belong to the government; had not been received by the government; and were not kept by the government for information. The State's appellate brief declares that it was only after Smith signed and delivered the forms to the University that they became government records. The State may have proved a violation of sec. 37.10(a)(2). However, we must decide whether the State proved the crime that it alleged, a violation of sec. 37.10(a)(1).

The case law is sparse, but clear. The parties have cited only Penal Code sections 37.01 and 37.10 and the cases of *Nogueira v. State*, 123 Tex.Cr.R. 449, 59 S.W.2d 831 (1933) and the appeal of the retrial of that

case, *Nogueira v. State,* 125 Tex.Cr.R. 631, 69 S.W.2d 101 (1934), hereafter referred to as *Nogueira I* and *Nogueira II.*

*Nogueira I* construed one of the statutory predecessors of Section 37.10, article 1002 of the Penal Code of 1925. That statute forbade any person to willfully and maliciously change, alter, mutilate, destroy, deface, or injure any book, paper, record, or document required or permitted by law to be kept by a public officer. It did not prohibit making false entries with intent to defraud. That crime was then covered by Penal Code article 1123. Nogueira, an assistant to the Dallas County District Clerk, made a false entry in the "sundries" section of the District Clerk's cash book for the year 1930. The figure, which was the first entered into the book for the year 1930, was $1,000 less than the last entry in the cash book for the year 1929. Nogueira was convicted and sentenced to two years imprisonment. This judgment was reversed on appeal in *Nogueira I,* and the court held that the new cash book was not a governmental record within article 1002 at the time Nogueira made the false entry; that is, the court construed article 1002 to require some alteration, destruction, etc. of an already existing governmental record. The court held:

"The authorities of Dallas County seem to have proceeded in this case on the hypothesis that a false entry in a new cash book intended to be thereafter a part of the books of account of the county would be a mutilation, destruction, defacing, alterating, etc. of a public record required or permitted to be kept by public officers in this State so as to make punishable under article 1002, supra, him who did such acts; but we do not so conclude.

It is not claimed that the accused in this case changed cash book 18 [the 1929 year cash book], which was already in existence, or that he mutilated, destroyed, changed or altered cash book 19 after the entry was made, or as to anything already written or entered therein. In our judgment, the indictment in this case charged no offense. The facts failed to show any mutilation, destruction, defacing, alteration, etc., such as is forbidden by article 1002, supra.:

Nine months later, *Nogueira II* was decided. Nogueira had been re-indicted for an offense under article 1123, Penal Code, for having made a false entry with intent to defraud in a book of account. Article 1123 differed from article 1002 of the 1925 Penal Code, and it differs from section 37.10 of our present Penal Code, because it does not require proof that a government record was affected. Consequently, Nogueira's second conviction and second two year sentence were affirmed in *Nogueira II.* The State avoided having to prove that a governmental record was involved by proceeding on a different statute, and the evidence was held sufficient to sustain the conviction under that statute.

*Smith v. State,* 87 Tex.Cr.R. 219, 220 S.W. 552 (1920) sheds further light on when a document becomes a governmental record. The prosecution in *Smith* was for violation of Article 943 of the Penal Code of 1911, a predecessor of article 1002 of the 1925 Penal Code. The statute construed in *Smith* was thus the same as that construed in *Nogueira I,* and both are ancestors of section 37.10, which controls this case. In *Smith,* applicants for teacher certificates took a mandatory state examination during the summer of 1919. The written examinations were placed in a box by an employee of the State Superintendent of Education, who delivered it to an expressman for forwarding to the State Superintendent of Public Instruction at Austin. The expressman, having been bribed, took the box to one Bryant, who altered the examinations and then returned them to the expressman for transportation to Austin. The court rejected the appellant's argument in *Smith* that the examinations were not governmental records at the time they were altered. It held that the teacher examinations were governmental records when altered, because: (1) statutes then in effect required the written answers to be forwarded to the State Superintendent of Education, and they were thus "required or permitted by

the law to be kept by any officer within this state"; and (2) the papers, at the time they were altered, were already in the possession of the State Superintendent, because they had been delivered to his employee at the test site. The holding in *Smith* is significant because neither factor that persuaded the court to hold that these documents were government records exists in the present case.

The State argues that *Nogueira I* does not control this case. This is so, it asserts, because section 37.10 is not merely a recodification of former article 1002, but, as pointed out in the practice commentary for section 37.10, "sub-section (a)(1) broadens Texas law to include a prohibition against making false entries in governmental records." Regardless of the scope of section 37.10, however, it does not determine when a document becomes a governmental record. That issue is controlled by the definition in section 37.01 and by case law, such as *Nogueira I* and *Smith, supra.*

We hold that under section 37.01, *Nogueira I*, and *Smith*, the "contractor's estimates" attached to these indictments were not governmental records when the entries were made. Therefore, the evidence is insufficient to prove that appellants made a false entry in a government record. We need not decide whether any other offense was proved, because no other offense was charged.

Ground of error three is sustained.

The judgment of the district court is reversed and reformed to reflect an acquittal.