Barbara POKLADNIK, Allan W. Coker, and Tejas Wrecker Service, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 05–93–00538–CR to 05–93–00554–CR, 05–93–00609–CR, 05–93–00804–CR to 05–93–00812–CR.

Court of Appeals of Texas, Dallas.

May 10, 1994.

Layne H. Harwell, Ft. Worth, Bill Yarborough, Bedford, for appellants.

Donald G. Davis, Dallas, for appellee.

Before THOMAS, BURNETT and CHAPMAN, JJ.

**OPINION**

THOMAS, Justice.

In a joint trial, the trial court convicted Barbara Pokladnik, Allan W. Coker, and Tejas Wrecker Service (Tejas) in nine separate

cases of tampering with governmental records.[1] We hold that the documents in question were not governmental records when the false entries were made. Accordingly, we reverse the trial court's judgments and enter judgments of acquittal.

## FACTUAL BACKGROUND

Coker, doing business as Tejas, employed Pokladnik. Tejas towed automobiles parked in unauthorized areas on private property. Tejas stored the cars until the owners claimed them. If an owner did not claim the vehicle, Tejas sold the vehicle to recoup the storage costs. When Tejas sold an automobile, Pokladnik prepared a package of sale documents which included a lien-foreclosure affidavit.[2] When a vehicle was sold, Tejas delivered the sales packets to the purchaser. Tejas routinely sold many of the unclaimed vehicles to Ram Automotive.

An auto theft detective with the Dallas Police Department received a call on July 7, 1991, concerning a stolen Chevrolet Camaro. The car was recovered at Ram on August 10, 1991. An investigation revealed that Ram had purchased the Camaro four days earlier from Tejas. On August 13, the detective went to Tejas to check its records on the Camaro. The lien-foreclosure affidavit executed by Pokladnik indicated that Tejas sold the Camaro on August 18, 1991. Because Tejas had not held the Camaro for the required thirty-day period and in view of the post-dated affidavit, the detective obtained a search warrant for Tejas's records.

On August 15, police executed the search warrant. The search revealed a series of sales packets in which Pokladnik swore that Tejas sold vehicles on a date that had not yet occurred. Based upon the affidavits in nine sales packets, the State charged each appellant by separate indictments with tampering with a government record, a third-degree felony.

## GOVERNMENTAL RECORDS

A person commits a felony offense if he knowingly makes a false entry in, or false alteration of, a governmental record. *See* TEX.PENAL CODE ANN. § 37.10(a)(1) (Vernon Supp.1994) (tampering with a governmental record). The term "governmental record" is defined in section 37.01 as:

(1) "Governmental record" means anything:

(A) belonging to, received by, or kept by government for information; or

(B) required by law to be kept by others for information of government.

Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 37.01, 1973 TEX.GEN.LAWS 883, 946, *amended by* Act of April 4, 1991, 72nd Leg., R.S., ch. 113, § 3, 1991 Tex.Gen.Laws 686, 687.

The indictments[3] allege appellants knowingly made a false entry in a governmental

1. The trial court assessed punishment in each case as follows: Pokladnik, four years' confinement; Coker, three years' confinement; and Tejas, a $1000 fine.

2. A "Questionnaire Affidavit" For Foreclosure Under Statutory Storage–Mechanic's Lien is a form prescribed by the State Department of Highways and Public Transportation (Form D12–265). The form contains places for information on the vehicle, the date left for storage or repair, amount of charges, and an explanation as to authority under which possession was acquired. The form then states:

   **AFFIDAVIT OF STATUTORY LIENHOLDER:** I, the undersigned statutory lienholder, certify that the facts contained herein are true and correct and that the vehicle described above was left for storage and/or repair and that the owner and lienholder were notified, as required by statute, to come forward and pay the charges due and pick up the vehicle. I further certify that possession of the vehicle has continued for 30 days after the day on which notice of the amount of charges was mailed and that such charges remain unpaid. I am, therefore, proceeding to foreclose on the statutory storage and/or mechanic's lien in accordance with the provisions of Chapter 70, State Property Code.

   There follows places for the name and address of the storage facility, signature of the affiant, date, signature and seal of the notary public. At the bottom of Page 1, affiants are warned that swearing to a false affidavit is punishable by a fine of up to $2000, a year in jail, or both. Page 2 contains places for information on the date and location of the public sale and the amount of the sale. The sworn information on Page 2 contains the false entries in controversy in these cases.

3. The indictments against each appellant are identical except for the defendant's name.

record "belonging to the State Department of Highways and Public Transportation, to wit: a State Department of Highways and Public Transportation 'Questionnaire Affidavit' For Foreclosure Under Statutory Storage–Mechanic's Lien." Thus, for these verdicts to be upheld, the lien foreclosure affidavits must be something "belonging to" government.[4]

Appellants contend the documents in question were not government records when the false entries were made. Specifically, they assert that the lien-foreclosure affidavits were never filed, delivered, or received by any governmental entity, including the State Department of Highways and Public Transportation (the Department). Thus, appellants argue the affidavits were not something "belonging to, received by, or kept by government for information." In support of this position, appellants rely upon *Constructors Unlimited Inc. v. State*, 717 S.W.2d 169 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd).

In *Constructors Unlimited*, the court addressed *when* a document becomes a government record. In that case, a corporate general contractor and its president were required to submit monthly forms relative to a construction project. The forms showed the amounts due and the work that had been done and outlined the various bills that had been paid. These forms were subsequently submitted to a governmental entity. Apparently, the contractor and its president made false entries in the forms by swearing that "all current invoices and obligations have been paid in full." These false entries formed the basis for the criminal charges.

The appellate court reversed the convictions, holding that the forms containing the false statements were not government records at the time the president signed them. *See Constructors Unlimited*, 717 S.W.2d at 174. In reaching this decision, the court reasoned that at the time they were executed, the forms did not belong to the government, had not been received by the government, and were not kept by the government for information. The forms did not become government records until they were later submitted to the governmental entity. *Constructors Unlimited*, 717 S.W.2d at 173–74.

Likewise, in our case, the evidence shows that Tejas never submitted the affidavits to the Department. Pokladnik, as Tejas' employee, completed the forms and delivered them to Ram. No government employee assisted in completing the form or reviewed the form. There was no evidence suggesting Ram was an agent of the State. *See Smith v. State*, 87 Tex.Crim. 219, 220 S.W. 552 (1920) (teacher exams were governmental records when altered because the papers, at the time they were altered, were in the possession of the state superintendent of education because they had been delivered to his employee at the test site). Additionally, Ram's owner testified that he never intended to submit the affidavits to the State. In short, no government entity ever put its hands on these documents.

Nevertheless, the State argues that because the affidavit is a form prescribed by statute, the form thereby "belongs" to the Department. We disagree. Statutory authorization to prescribe forms does not equate to ownership. Moreover, the evidence established that the forms are not serialized, numbered, or registered. Users of the forms are not required to get their supply from the State; they can have the forms printed on a copy machine.

We hold that because at the time the false entries were made, the forms did not belong to the government, had not been received by the government, and were not kept by government for information, the forms are not government records. Like our colleagues in *Constructors Unlimited*, "we need not decide whether any other offense was proved, because no other offense was charged." *See Constructors Unlimited*, 717 S.W.2d at 174.

4. The State does not argue that the documents were "required by law to be kept by others for information of government."

We sustain the first point of error as to each appellant.[5] Accordingly, we reverse the trial court's judgments and enter judgments of acquittal.

---

5. Because resolution of the first point of error is dispositive of each of the cases, we do not reach appellants' remaining points of error.