

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00043-CR

---

EX PARTE:  LEO GRAVES

---

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2012-372

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

## OPINION

Leo Graves was convicted by a jury of tampering with a government record. Pursuant to a sentencing agreement, Graves was sentenced to five years' imprisonment, the sentence was suspended, and he was placed on community supervision for a period of five years. On October 3, 2012, Graves filed an application for a writ of habeas corpus premised on his claim that the record is devoid of any evidence supporting his conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West Supp. 2013). The habeas court agreed with Graves, granted the writ of habeas corpus, acquitted Graves of the offense, and dismissed the State's indictment. The State appeals. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8, art. 44.01(a)(1) (West Supp. 2013) (providing this Court with jurisdiction over Graves' appeal).

Due process is violated if there is no evidence upon which to base a conviction. *Ex parte Perales*, 215 S.W.3d 418, 419–20 (Tex. Crim. App. 2007) (citing *Ex parte Coleman*, 599 S.W.2d 305, 307 (Tex. Crim. App. [Panel Op.] 1978)). Thus, a claim that the record is devoid of evidentiary support for a conviction is cognizable on a post-conviction habeas corpus application. *Id.* at 420 (citing *Ex parte Brown*, 757 S.W.2d 367, 368–69 (Tex. Crim. App. 1988); *Ex parte Williams*, 703 S.W.2d 674, 679–80 (Tex. Crim. App. 1986)); *see Ex parte Knight*, 401 S.W.3d 60, 64 (Tex. Crim. App. 2013).

An applicant seeking relief via the writ of habeas corpus must prove his claim by a preponderance of the evidence. *Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997). In reviewing a trial court's ruling on a post-conviction application for the writ, we view the evidence in the light most favorable to the habeas court's ruling, and we uphold that ruling

2

absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewi*s, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007). We afford almost total deference to the habeas court's findings of historical fact, so long as the findings are supported by the record. *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004). Similarly, we will defer to the trial court's application of the law to the facts, but only when resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Id.* When resolution of the ultimate question turns solely on an application of legal standards, our review is de novo. *Peterson*, 117 S.W.3d at 819.

We previously remanded this case to the habeas court for the entry of findings of fact and conclusions of law. *Ex parte Graves*, 405 S.W.3d 916, 917 (Tex. App.—Texarkana 2013, no pet.). The habeas court made the following fact-findings:

- Graves, the owner of Graves Tire Service, filed an Application For Designation As An Official Vehicle Inspection Station with the Texas Department of Public Safety (DPS) which, if granted, would allow Graves Tire Service to issue state inspection stickers to customers.

- Graves signed the DPS application, swearing that all of the information contained in the application was true and correct.

- The application contained a false federal tax identification number. The federal tax identification number used by Graves was that of a non-affiliated local business that had done business with Graves and had provided Graves with a Form 1099 reflecting its tax identification number.

- Graves was indicted for "knowingly MAK[ING] a FALSE ENTRY in a GOVERNMENTAL RECORD, . . . said FALSE ENTRY BEING THE FEDERAL TAX ID#."

- At trial, the State introduced evidence that Graves' motive for providing the false tax identification number "was to circumvent grounds upon which DPS would have denied the application."

3

- At trial, Graves offered evidence that an employee prepared the application and inserted the wrong tax identification number by mistake. The jury rejected Graves' defense and convicted him.

- The application became a governmental record upon receipt by the DPS.

- The false identification number was entered on the forms before the application became a governmental record.

Graves was indicted under Section 37.10 of the Texas Penal Code, titled "Tampering With Governmental Record," which states, in relevant part, "A person commits an offense if he: (1) knowingly makes a false entry in, or false alteration of, a governmental record." TEX. PENAL CODE ANN. § 37.10(a)(1) (West Supp. 2013).[1] The definition of a "governmental record" includes "anything belonging to, received by, or kept by government for information, including a court record" or "anything required by law to be kept by others for information of government." TEX. PENAL CODE ANN. § 37.01(2) (West Supp. 2013).[2] Before the habeas court, Graves argued (1) that his application did not become a governmental record until after it was received by DPS, (2) that any false entry or alteration was made prior to the document becoming a governmental record, and (3) that there was no evidence that he altered the application after it was received by DPS. Graves concluded, therefore, that there was no evidence showing that he made a false entry or alteration to a governmental record as alleged in the State's indictment against him.

---

[1] Graves was not indicted under Section 37.10(a)(2), which makes it a crime to make, present, or use "any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record." TEX. PENAL CODE ANN. § 37.10(a)(2) (West 2011).

[2] As further explained below, a blank government form does not belong to the government. Until it is filled out and received, the form is not required to be kept for information.

The habeas court agreed, finding that the State failed to prove any falsification after DPS received Graves' application. In making its decision, the habeas court referred to *Pokladnik v. State*, 876 S.W.2d 525 (Tex. App.—Dallas 1994, no pet.). Pokladnik was an employee of Tejas, a business that stored towed automobiles. *Id.* at 526. When a vehicle was towed to Tejas, Tejas was required by statute to send written notice to the vehicle's owner that they should come forward, pay the storage charges due, and reclaim the vehicle. *Id.* Tejas was authorized to sell any automobiles that remained unclaimed thirty days after providing the required notice. *Id.* When a vehicle was sold, Tejas prepared a package of sale documents, including a DPS-prescribed form titled "'Questionnaire Affidavit' For Foreclosure Under Statutory Storage-Mechanic's Lien." *Id.* at 526 n.2. The DPS form required a Tejas employee to swear (1) that the vehicle had been placed in storage, (2) that statutory notice was provided to the owner, (3) that thirty days had elapsed since the notice was mailed to the owner, and (4) that the vehicle had not been claimed. *Id.* Pokladnik filled out nine questionnaire affidavits in connection with the sale of nine vehicles. *Id.* With respect to each of these nine vehicles, the statutory thirty-day notice period had not expired at the time the affidavits were executed; consequently, Pokladnik had falsified each of the form affidavits. *Id.*

Like Graves, Pokladnik was indicted under Section 37.10(a)(1) of the Texas Penal Code. *Id.* at 526–27. Also like Graves, Pokladnik argued that the DPS forms were not governmental records when the false entries were made. *Id.* at 527. The Dallas Court of Appeals agreed. *Id.* The court concluded, "We hold that because at the time the false entries were made, the forms did not belong to the government, had not been received by the government, and were not kept

5

by the government for information, the forms are not government records." *Id.* In reaching this conclusion, the *Pokladnik* court cited to *Constructors Unlimited, Inc. v. State*, 717 S.W.2d 169, 174 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd), another case holding that false entries made to forms prior to their receipt by a governmental entity cannot support an indictment under Section 37.10(a)(1). The appellate courts entered judgments of acquittal in both *Pokladnik*, 876 S.W.2d at 528, and *Constructors Unlimited*, 717 S.W.2d at 174.

Referencing *Pokladnik* and *Constructors Unlimited*, the State "concedes . . . that the documents in question did not become government records until they were submitted to the [DPS], and were not government documents when Graves *first* entered the false tax identification number."

However, for the first time on appeal, the State attempts to distinguish *Pokladnik* and *Constructors Unlimited* based on a letter Graves sent to DPS. Graves' letter stated (1) that it had been over one year since Graves Tire Service had sent employees to the DPS "to test for approval to inspect vehicles," (2) that DPS was giving Graves Tire Service fictitious start dates for its vehicle inspection service, (3) that Graves Tire Service had satisfied all requirements for obtaining the official DPS designation, and (5) that DPS should provide a date certain on which Graves Tire Service could begin conducting state inspections. The State argues that this letter, coupled with Graves' failure to correct the tax identification number despite inquiries from DPS employees, somehow amounted to a "ratif[ication of] his earlier act of using the false identification number, which was tantamount to making the entry again as of the date of his letter."

The State candidly admits that it "has been unable to find any case law or statute in support of its position," and we, too, were unable to find authority supporting the State's position. As a result, we cannot say that the habeas court abused its discretion in granting Graves' application for habeas relief. *See Peterson*, 117 S.W.3d at 819. Moreover, Graves' letter includes no reference to the tax identification number issue. The State's indictment alleged that Graves falsified a tax identification number on the application form, an act which occurred prior to the form becoming a governmental record. Graves' subsequent letter or his failure to correct the tax identification number did not transform the timing of when the act alleged in the State's indictment occurred.

We conclude, as a matter of law, that the conduct alleged in the State's indictment against Graves does not constitute a violation of Section 37.10(a)(1) of the Penal Code. Therefore, the habeas court's findings were supported by the record, and its entry of a judgment of acquittal was proper.

We affirm the habeas court's order in all respects.


Bailey C. Moseley
Justice

Date Submitted:     May 15, 2014
Date Decided:       June 16, 2014

Publish

7