**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00536-CR**
_____

**JESSICA SEKERKA SIEGEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-03-02754 CR**

**MEMORANDUM OPINION**

Appellant Jessica Sekerka Siegel was charged with tampering with a governmental record. The charging instrument alleged that Siegel falsely stated her length of continuous residence in Montgomery County on an application for a place on the Republican general primary ballot in 2012.[1] *See* Tex. Penal Code Ann. § 37.10(a)(1) (West Supp. 2014). The jury convicted Siegel of tampering with a

---

[1]Because the 2013 amendments of section 37.10 of the Texas Penal Code do not affect section 37.10(a)(1) of the Texas Penal Code, we cite the current version of the statute.

1

governmental record and assessed punishment at two years of confinement in a state jail facility, but recommended that Siegel's sentence be suspended and that she be placed on community supervision. The trial court signed a judgment in accordance with the jury's verdict.

In her sole appellate issue, Siegel challenges the legal sufficiency of the evidence supporting her conviction. Specifically, Siegel contends that, even if the application became a governmental record at some point, there was no evidence that the document at issue was a governmental record when she made the false entry. We reverse the trial court's judgment and render a judgment of acquittal.

## THE EVIDENCE

Siegel sought to appear on the 2012 Republican primary ballot as a candidate for judge of the 418th District Court in Montgomery County, Texas, and she filed an application on March 9, 2012.[2] Walter Wilkerson, Jr., the chairman of the Montgomery County Republican Party ("MCRP"), testified that a candidate for district court judge must have resided in Montgomery County for two years. According to Wilkerson, the Texas Secretary of State is the chief election officer for the State of Texas, and the Texas Election Code requires candidates who wish

---

[2] Siegel filed a previous application on Dec. 19, 2011, avowing to have resided in Montgomery County for one year prior to the date of such application. That application was rejected and not filed with the party.

to run on the primary ballot to fill out an application. Wilkerson explained that he is required by law "to accept the document in a timely manner and to examine it, make certain that it is properly completed, and that as best I can tell all the items there are true[.]" Wilkerson indicated that once he signs and dates the application, the application becomes "a matter of permanent record for the election" and "then that person is qualified to appear on the primary ballot." Wilkerson explained that he is not required to forward the application to the Secretary of State, but the Election Code provides that the application is "a matter of record" that the party must "keep for a period of time after the election." According to Wilkerson, the MCRP is not a federal or state agency.

Keith Ingram, the director of the elections division at the Texas Secretary of State's office, testified that the Secretary of State serves as chief election officer of the State of Texas. Ingram explained that the MCRP is not a governmental entity; rather, MCRP is a quasi-governmental entity because although some governmental statutes, such as the open records act, apply to MCRP, MCRP "is generally a private entity." According to Ingram, the Secretary of State's Office creates the form used for applications to appear on a primary ballot. The State introduced the form into evidence. The information requested on the form includes the office sought, whether the term sought is a full term or an unexpired term, the applicant's

name, address, occupation, birth date, telephone numbers, county of residence, and the length of the applicant's residence in the state, county, and district. The form contains none of the requested information until the applicant completes it. Ingram testified that the applications are not filed with the Secretary of State's Office, and he explained that the applications are kept by the political party with which they were filed. According to Ingram, the Election Code requires political parties to retain applications for twenty-two months after an election. The State rested at the conclusion of Ingram's testimony.

## ANALYSIS

As discussed above, in her sole appellate issue, Siegel challenges the legal sufficiency of the evidence that the document at issue was a governmental record, either in general or, alternatively, when she made the false entry. Siegel does not challenge the sufficiency of the evidence as to other elements of the offense. In reviewing the legal sufficiency of the evidence, we consider all the evidence in a light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

Siegel was charged under section 37.10(a)(1) of the Texas Penal Code, which provides, in pertinent part, that a person commits the offense of tampering with a governmental record if she "knowingly makes a false entry in . . . a governmental record[.]" Tex. Penal Code Ann. § 37.10(a)(1) (West Supp. 2014). Chapter 37 of the Texas Penal Code defines "governmental record" as, in pertinent part, "anything belonging to, received by, or kept by government for information" or "anything required by law to be kept by others for information of government[.]"[3] Tex. Penal Code Ann. § 37.01(2)(A), (B) (West Supp. 2014).

We need not determine when, or if, Siegel's application became a governmental record; rather, we need only determine whether the application was a governmental record when Siegel made the false entry. *See generally* Tex. Penal Code Ann. § 37.10(a)(1). In *Pokladnik v. State*, 876 S.W.2d 525 (Tex. App.—Dallas 1994, no pet.), the defendant, who was an employee of a business that stored towed automobiles, made false entries on a Department of Public Safety lien-foreclosure affidavit form, which required an employee to swear that a vehicle being sold by the business had been placed in storage, that statutory notice was provided to the owner, that thirty days had elapsed since the notice was mailed,

---

[3]Because the 2013 amendments of section 37.01 of the Texas Penal Code do not affect section 37.01, subsections (A) and (B), we cite the current version of the statute.

and that the vehicle had not been claimed. *Id.* at 526 & n.2. The form contained spaces for information on the vehicle, the date the vehicle was left for storage or repair, the amount of charges, and an explanation as to the authority under which possession was acquired. *Id.* at 526 n.2. The State alleged that Pokladnik had filed false forms in nine sales packets and indicted him under section 37.10(a)(1) of the Texas Penal Code. *Id.* at 526.

On appeal, Pokladnik argued that the forms did not constitute governmental records when he made the false entries. *Id.* at 527. The Dallas Court of Appeals noted that "[s]tatutory authorization to prescribe forms does not equate to ownership [of the forms]" and concluded that the forms were not governmental records "because at the time the false entries were made, the forms did not belong to the government, had not been received by the government, and were not kept by the government for information[.]" *Id.*; *see Constructors Unlimited Inc. v. State*, 717 S.W.2d 169, 173-74 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (Forms did not become governmental records until they were later submitted to a governmental entity.). The court reversed Pokladnik's convictions and rendered judgments of acquittal. *Pokladnik*, 876 S.W.2d at 528.

Likewise, in *Ex parte Graves*, 436 S.W.3d 395 (Tex. App.—Texarkana 2014, pet. ref'd), the defendant, who owned Graves Tire Service, filed an

6

Application For Designation As An Official Vehicle Inspection Station with the Texas Department of Public Safety. *Id*. at 396-97. The application contained a false federal tax identification number, and the evidence showed that the application became a governmental record upon receipt by the DPS and Graves entered the false information before the application became a governmental record. *Id*. at 397. The State charged Graves with tampering with a governmental record under section 37.10(a)(1) of the Texas Penal Code, and Graves was convicted. *Id*. at 396-97. Graves then filed an application for writ of habeas corpus, and the habeas court relied upon *Pokladnik* in concluding that "the State failed to prove any falsification after DPS received Graves's application." *Id*. at 397. Accordingly, the habeas court granted Graves's application for writ of habeas corpus, acquitted Graves of the offense, and dismissed the State's indictment. *Id*. at 396. On appeal by the State, the Texarkana Court of Appeals held "that the conduct alleged in the State's indictment against Graves does not constitute a violation of Section 37.10(a)(1) of the Penal Code[,]" concluded that the habeas court's findings were supported by the record, and affirmed the habeas court's entry of a judgment of acquittal. *Id*. at 396, 399.

In its brief, the State notes that the Texas Election Code prescribes the contents of the form for an application to appear on the ballot, and the party

official who receives the application reviews and accepts the application for filing. The State also notes that the party must retain the application for two years after the general election. The State relies upon a 1993 Attorney General Opinion in support of its argument that Siegel's application for a place on the ballot became a governmental record at the time of its execution. *See* Tex. Att'y Gen. LO-93-65, 1993 WL 773334, at \*2 (1993) (holding that an application to appear on a party primary ballot filed with the party's county chairman became a governmental record at the time it was executed). At the outset, we note that "opinions issued by the Attorney General, though persuasive, are not binding on the courts of this [S]tate." *Solum Eng'g, Inc. v. Starich*, No. 14-13-00428-CV, 2014 WL 4262175, at \*2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, pet. denied) (mem. op.); *see also In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011). In addition, the Attorney General letter opinion upon which the State relies was written before both *Pokladnik* and *Ex parte Graves*. For these reasons, we decline the State's invitation to adopt the Attorney General's reasoning.

The State also relies upon *Morales v. State*, 11 S.W.3d 460 (Tex. App.—El Paso 2000, pet. ref'd). In *Morales*, the defendant was a constable who submitted a petition in lieu of paying a filing fee to the Democratic Party chairperson, and he was charged with tampering with a governmental record when investigation

8

revealed that some of the required signatures on his petition had been forged. *Id.* at 462. However, Morales was not charged under section 37.10(a)(1) of the Penal Code; rather, he was charged under section 37.10(a)(5) of the Texas Penal Code, which states that a person commits an offense if he "'makes, presents, or uses a governmental record with knowledge of its falsity.'" *Id.* at 463. The *Morales* court relied upon the term "uses" in the section 37.10(a)(5) in determining that the party chairman "was required to accept the petition[,] at which time it became a governmental record[,]" and Morales used the petition to fraudulently induce the chairman to place Morales's name on the ballot. *Id.* at 463. Because Morales was charged under section 37.10(a)(5) of the Texas Penal Code, we conclude that the holding in *Morales* is inapposite to this case. *See id.* The Court of Criminal Appeals parsed the provisions of section 37.10 in like manner in *State v. Vasilas*, 187 S.W.3d 486, 491 (Tex. Crim. App. 2006).

We conclude that when Siegel made the entry about her length of residency, her application was not a governmental record. *See Graves*, 436 S.W.3d at 396-99; *Pokladnik*, 876 S.W.2d at 527-28. As the *Pokladnik* court noted, "'we need not decide whether any other offense was proved, because no other offense was charged.'" *Pokladnik*, 876 S.W.2d at 527 (quoting *Constructors Unlimited*, 717 S.W.2d at 174); *see also generally* Tex. Penal Code Ann. § 37.10(a)(2)  (A person

9

commits the offense of tampering with a governmental record if she "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record[.]"). Because the evidence was legally insufficient to prove that the application was a governmental record when Siegel made the false entry, we must reverse the trial court's judgment of conviction and render a judgment of acquittal.

REVERSED AND RENDERED.

_____
CHARLES KREGER
Justice


Submitted on April 9, 2015
Opinion Delivered June 24, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.