PD-0962-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/25/2015 9:53:29 AM
Accepted 8/26/2015 3:32:16 PM
ABEL ACOSTA
CLERK

**Case No. PD-0962-15**

IN THE COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXAS

---

**NO. 09-13-00536-CR**

ON APPEAL FROM THE COURT OF APPEALS FOR THE
NINTH DISTRICT OF TEXAS AT BEAUMONT

---

**THE STATE OF TEXAS**

**v.**

**JESSICA SEKERKA SIEGEL**

---

*Arising from:*

**Cause No. 12-03-02754-CR**
IN THE 221ST DISTRICT COURT,
MONTGOMERY COUNTY, TEXAS

---

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

---

FILED IN
COURT OF CRIMINAL APPEALS

August 26, 2015

ABEL ACOSTA, CLERK

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas

**TIANA JEAN SANFORD**
Assistant District Attorney

**JASON LARMAN**
Assistant District Attorney
Montgomery County, Texas
T.B.C. No. 24072468
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
jason.larman@mctx.org

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 68.4, the State hereby lists all parties to the trial court's judgment:

| | |
|---|---|
| District Attorney: | **BRETT W. LIGON**<br>District Attorney<br>Montgomery County, Texas<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 |
| Counsel for the State in the trial court: | **TIANA JEAN SANFORD**<br>**JASON LARMAN**<br>Assistant District Attorneys<br>Montgomery County, Texas<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 |
| Counsel for the State in the appellate court: | **JASON LARMAN**<br>Assistant District Attorney<br>Montgomery County, Texas<br>207 W. Phillips, Second Floor<br>Conroe, Texas 77301 |
| Counsel for the appellant in the trial court: | **JARROD WALKER**<br>301 N. Thompson<br>Conroe, Texas 77301 |
| Counsel for the appellant in the appellate court: | **RICHARD MARTIN P. CANLAS**<br>300 West Davis, Suite 560<br>Conroe, Texas 77301 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... ii

TABLE OF CONTENTS ................................................................................ iii

INDEX OF AUTHORITIES ............................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................................. 1

STATEMENT OF THE CASE .......................................................................... 1

GROUND FOR REVIEW ............................................................................... 2

STATEMENT OF FACTS .............................................................................. 2

ARGUMENT .............................................................................................. 3

    The court of appeals adopted a definition of "makes" that is far
    too narrow. ........................................................................................ 3

CONCLUSION AND PRAYER ........................................................................ 6

CERTIFICATE OF COMPLIANCE WITH RULE 9.4 ........................................... 7

CERTIFICATE OF SERVICE .......................................................................... 7

# INDEX OF AUTHORITIES

**Cases**

*Constructors Unlimited Inc. v. State*, 717 S.W.2d 169
    (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) ................................................. 4

*Ex parte Graves*, 436 S.W.3d 395 (Tex. App.—Texarkana 2014, pet. ref'd) ........ 4, 5

*Pokladnik v. State*, 876 S.W.2d 525 (Tex. App.—Dallas 1994, no pet.) ................... 4

**Statutes**

Tex. Penal Code Ann. § 37.10 (West Supp. 2014) ................................................. 3

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

## STATEMENT REGARDING ORAL ARGUMENT

The State believes oral argument is necessary because this case presents an undecided issue of important Texas law.

## STATEMENT OF THE CASE

The appellant was charged by two separate indictments with the offense of tampering with a governmental record related to conduct occurring on March 9, 2012. The cases were tried in a single proceeding; the appellant entered a plea of not guilty, but the jury found her guilty. The jury assessed her punishment at two years confinement in a state jail facility, but recommended that the sentence be suspended and that the appellant be placed on community supervision. The trial court sentenced the appellant in accordance with the jury's verdict, suspended the sentence, and placed the appellant on community supervision for a period of four years.

The Ninth Court of Appeals found that the evidence was legally insufficient, reversed the appellant's conviction, and rendered a judgment of acquittal. *See Siegel v. State*, No. 09-13-00536-CR, 2015 WL 3897860, at *3 (Tex. App.— Beaumont June 24, 2015, no. pet. h.).

1

## GROUND FOR REVIEW

The court of appeals erred in concluding that the evidence was insufficient to support the appellant's conviction because it adopted too narrow of a meaning for the term "makes," as used in Texas Penal Code § 37.10(a)(1).

## STATEMENT OF FACTS

On December 19, 2011, the appellant filed an application to appear on the 2012 Republican Party primary ballot as a candidate for the office of judge of the 418th District Court of Montgomery County, Texas (R.R. 8: State's ex. 14). On that application, the appellant asserted that she had resided continuously in Montgomery County for one year prior to that date (R.R. 8: State's ex. 14).[1] That application was refused because it failed to satisfy the requirement that she live continuously in Montgomery County for two years before the general election in November of 2012. Due to redistricting efforts, the deadline for filing an application was subsequently extended to March 9, 2012.

On March 9, 2012, the appellant returned to the Montgomery County Republican Party Headquarters and again filed an application to appear on the

---

[1] The appellant was charged by a separate indictment with the offense of tampering with a governmental record for allegedly false statements related to her period of residency contained in the December 19th application, and she was tried in a single proceeding for both indictments. The jury found her not guilty of the offense alleged to have occurred on or about December 19, 2011.

primary ballot. This application indicated that the appellant had lived in Montgomery County for the preceding one year and five months (R.R. 8: State's ex. 15). Because the appellant did not live or work in Montgomery County during that period of time, and lived in Harris County until after she leased an apartment in Montgomery County beginning February 5, 2012, that assertion was false (R.R. 4: 18-25).

## ARGUMENT

**THE COURT OF APPEALS ADOPTED A DEFINITION OF "MAKES" THAT IS FAR TOO NARROW.**

As charged in the present indictment, a person commits the offense of tampering with a governmental record if, with the intent to harm or defraud another, the person knowingly makes a false entry in a governmental record. *See* Tex. Penal Code Ann. § 37.10 (West Supp. 2014).

The court of appeals held that the evidence was insufficient because, at the moment the appellant wrote false information on the application, it was not a governmental record. In reaching its conclusion, the court of appeals focused exclusively on the status of the document containing the false statement at the moment the false statement was written. Certainly, by writing a false statement on a governmental record, a person "makes a false entry in a governmental record." But that does not mean the person who makes a false statement in an application and files that application with government does not also make a false entry in a

3

governmental record. In even the most simplistic of terms, the actor's conduct in the latter scenario has created a false entry in a governmental record that did not previously exist.

Admittedly, the court of appeals relied on several other opinions from courts of appeals that reached similar conclusions and found the evidence to be insufficient to support a conviction under section 37.10(a)(1) when the false statement is written on an application or other document before it is received by government. *See Ex parte Graves*, 436 S.W.3d 395, 398 (Tex. App.—Texarkana 2014, pet. ref'd); *Pokladnik v. State*, 876 S.W.2d 525, 527 (Tex. App.—Dallas 1994, no pet.); *Constructors Unlimited Inc. v. State*, 717 S.W.2d 169 (Tex. App.— Houston [1st Dist.] 1986, pet. ref'd).

Assuming that the reasoning of the cases relied on by the court of appeals is correct, those cases are distinguishable from the instant case. In *Pokladnik*, the documents were never filed with any governmental agency, and thus, no false entry ever appeared in a governmental record. *See Pokladnik*, 876 S.W.2d at 527 ("In short, no government entity ever put its hands on these documents"). In *Constructors Unlimited*, the defendant, who was the president of a general contracting company, submitted an invoice containing a false statement regarding whether the subcontractors had been paid in full. *Constructors Unlimited Inc.*, 717 S.W.2d at 172. The invoice itself was ultimately submitted to government, but was

4

found not to be a governmental record at the time of the false entry. *Id.* There was no evidence that it ever resulted in any other false entries in a governmental record. *Id*. at 174. Similarly, in *Graves*, the State conceded that the records were not a governmental record at the time the false entries were made and presented no evidence that the false information from the form resulted in the creation of a false entry in any governmental record. *See Graves*, 436 S.W.3d at 398.

But the instant case is different. The appellant's conduct resulted in a false entry in a governmental record beyond the act of writing the false statement on the application. The application in this case was filed with the office of the Republican Party and used to determine the appellant's eligibility, and as a result, the appellant was falsely listed as an eligible candidate on the Republican Party primary ballot (R.R. 4: 53). The definition of a governmental record includes both election records and records required by law to be kept for information of government. *See* Tex. Penal Code Ann. § 37.01 (West Supp. 2014). The appellant's conduct caused to exist a false statement in a governmental record that would not have otherwise existed. Therefore, the appellant "made a false entry in a governmental record." By artificially restricting the meaning of "makes" to apply only to the direct action by a person who has physical possession of a governmental record, the court of appeals unnecessarily excluded conduct that results deliberately but indirectly in the creation of a false entry in a governmental record. Accordingly, this Court

5

should grant the State's petition for discretionary review and reverse the opinion issued by the court of appeals.

## CONCLUSION AND PRAYER

It is respectfully submitted that the judgment of the Ninth Court of Appeals is in error and that this Court should exercise its powers of discretionary review to correct that error.

**BRETT W. LIGON**
District Attorney
Montgomery County, Texas

*/s/Jason Larman*
**JASON LARMAN**
T.B.C. No. 24072468
Assistant District Attorney
Montgomery County, Texas
207 W. Phillips, Second Floor
Conroe, Texas 77301
936-539-7800
936-788-8395 (FAX)
jason.larman@mctx.org

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

I hereby certify that this document complies with the requirements of Tex. R. App. P. 9.4(i)(2)(D) because there are <u>993</u> words in this document, excluding the portions of the document excepted from the word count under Rule 9.4(i)(1), as calculated by the Microsoft Word computer program used to prepare it.

<div align="center" style="margin-left:auto">

*/s/Jason Larman*
**JASON LARMAN**
Assistant District Attorney
Montgomery County, Texas

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was mailed to counsel for the appellant on the date of the submission of the original to the Clerk of this Court.

*/s/Jason Larman*
**JASON LARMAN**
Assistant District Attorney
Montgomery County, Texas

# APPENDIX A

*OPINION OF THE NINTH COURT OF APPEALS*

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00536-CR**
_____

**JESSICA SEKERKA SIEGEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-03-02754 CR**

**MEMORANDUM OPINION**

Appellant Jessica Sekerka Siegel was charged with tampering with a governmental record. The charging instrument alleged that Siegel falsely stated her length of continuous residence in Montgomery County on an application for a place on the Republican general primary ballot in 2012.[1] *See* Tex. Penal Code Ann. § 37.10(a)(1) (West Supp. 2014). The jury convicted Siegel of tampering with a

---

[1]Because the 2013 amendments of section 37.10 of the Texas Penal Code do not affect section 37.10(a)(1) of the Texas Penal Code, we cite the current version of the statute.

1

governmental record and assessed punishment at two years of confinement in a state jail facility, but recommended that Siegel's sentence be suspended and that she be placed on community supervision. The trial court signed a judgment in accordance with the jury's verdict.

In her sole appellate issue, Siegel challenges the legal sufficiency of the evidence supporting her conviction. Specifically, Siegel contends that, even if the application became a governmental record at some point, there was no evidence that the document at issue was a governmental record when she made the false entry. We reverse the trial court's judgment and render a judgment of acquittal.

THE EVIDENCE

Siegel sought to appear on the 2012 Republican primary ballot as a candidate for judge of the 418th District Court in Montgomery County, Texas, and she filed an application on March 9, 2012.[2] Walter Wilkerson, Jr., the chairman of the Montgomery County Republican Party ("MCRP"), testified that a candidate for district court judge must have resided in Montgomery County for two years. According to Wilkerson, the Texas Secretary of State is the chief election officer for the State of Texas, and the Texas Election Code requires candidates who wish

---

[2] Siegel filed a previous application on Dec. 19, 2011, avowing to have resided in Montgomery County for one year prior to the date of such application. That application was rejected and not filed with the party.

2

to run on the primary ballot to fill out an application. Wilkerson explained that he is required by law "to accept the document in a timely manner and to examine it, make certain that it is properly completed, and that as best I can tell all the items there are true[.]" Wilkerson indicated that once he signs and dates the application, the application becomes "a matter of permanent record for the election" and "then that person is qualified to appear on the primary ballot." Wilkerson explained that he is not required to forward the application to the Secretary of State, but the Election Code provides that the application is "a matter of record" that the party must "keep for a period of time after the election." According to Wilkerson, the MCRP is not a federal or state agency.

Keith Ingram, the director of the elections division at the Texas Secretary of State's office, testified that the Secretary of State serves as chief election officer of the State of Texas. Ingram explained that the MCRP is not a governmental entity; rather, MCRP is a quasi-governmental entity because although some governmental statutes, such as the open records act, apply to MCRP, MCRP "is generally a private entity." According to Ingram, the Secretary of State's Office creates the form used for applications to appear on a primary ballot. The State introduced the form into evidence. The information requested on the form includes the office sought, whether the term sought is a full term or an unexpired term, the applicant's

3

name, address, occupation, birth date, telephone numbers, county of residence, and the length of the applicant's residence in the state, county, and district. The form contains none of the requested information until the applicant completes it. Ingram testified that the applications are not filed with the Secretary of State's Office, and he explained that the applications are kept by the political party with which they were filed. According to Ingram, the Election Code requires political parties to retain applications for twenty-two months after an election. The State rested at the conclusion of Ingram's testimony.

## ANALYSIS

As discussed above, in her sole appellate issue, Siegel challenges the legal sufficiency of the evidence that the document at issue was a governmental record, either in general or, alternatively, when she made the false entry. Siegel does not challenge the sufficiency of the evidence as to other elements of the offense. In reviewing the legal sufficiency of the evidence, we consider all the evidence in a light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

Siegel was charged under section 37.10(a)(1) of the Texas Penal Code, which provides, in pertinent part, that a person commits the offense of tampering with a governmental record if she "knowingly makes a false entry in . . . a governmental record[.]" Tex. Penal Code Ann. § 37.10(a)(1) (West Supp. 2014). Chapter 37 of the Texas Penal Code defines "governmental record" as, in pertinent part, "anything belonging to, received by, or kept by government for information" or "anything required by law to be kept by others for information of government[.]"[3] Tex. Penal Code Ann. § 37.01(2)(A), (B) (West Supp. 2014).

We need not determine when, or if, Siegel's application became a governmental record; rather, we need only determine whether the application was a governmental record when Siegel made the false entry. *See generally* Tex. Penal Code Ann. § 37.10(a)(1). In *Pokladnik v. State*, 876 S.W.2d 525 (Tex. App.—Dallas 1994, no pet.), the defendant, who was an employee of a business that stored towed automobiles, made false entries on a Department of Public Safety lien-foreclosure affidavit form, which required an employee to swear that a vehicle being sold by the business had been placed in storage, that statutory notice was provided to the owner, that thirty days had elapsed since the notice was mailed,

---

[3]Because the 2013 amendments of section 37.01 of the Texas Penal Code do not affect section 37.01, subsections (A) and (B), we cite the current version of the statute.

5

and that the vehicle had not been claimed. *Id*. at 526 & n.2. The form contained spaces for information on the vehicle, the date the vehicle was left for storage or repair, the amount of charges, and an explanation as to the authority under which possession was acquired. *Id*. at 526 n.2. The State alleged that Pokladnik had filed false forms in nine sales packets and indicted him under section 37.10(a)(1) of the Texas Penal Code. *Id*. at 526.

On appeal, Pokladnik argued that the forms did not constitute governmental records when he made the false entries. *Id*. at 527. The Dallas Court of Appeals noted that "[s]tatutory authorization to prescribe forms does not equate to ownership [of the forms]" and concluded that the forms were not governmental records "because at the time the false entries were made, the forms did not belong to the government, had not been received by the government, and were not kept by the government for information[.]" *Id*.; *see Constructors Unlimited Inc. v. State*, 717 S.W.2d 169, 173-74 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (Forms did not become governmental records until they were later submitted to a governmental entity.). The court reversed Pokladnik's convictions and rendered judgments of acquittal. *Pokladnik*, 876 S.W.2d at 528.

Likewise, in *Ex parte Graves*, 436 S.W.3d 395 (Tex. App.—Texarkana 2014, pet. ref'd), the defendant, who owned Graves Tire Service, filed an

6

Application For Designation As An Official Vehicle Inspection Station with the Texas Department of Public Safety. *Id*. at 396-97. The application contained a false federal tax identification number, and the evidence showed that the application became a governmental record upon receipt by the DPS and Graves entered the false information before the application became a governmental record. *Id*. at 397. The State charged Graves with tampering with a governmental record under section 37.10(a)(1) of the Texas Penal Code, and Graves was convicted. *Id*. at 396-97. Graves then filed an application for writ of habeas corpus, and the habeas court relied upon *Pokladnik* in concluding that "the State failed to prove any falsification after DPS received Graves's application." *Id*. at 397. Accordingly, the habeas court granted Graves's application for writ of habeas corpus, acquitted Graves of the offense, and dismissed the State's indictment. *Id*. at 396. On appeal by the State, the Texarkana Court of Appeals held "that the conduct alleged in the State's indictment against Graves does not constitute a violation of Section 37.10(a)(1) of the Penal Code[,]" concluded that the habeas court's findings were supported by the record, and affirmed the habeas court's entry of a judgment of acquittal. *Id*. at 396, 399.

In its brief, the State notes that the Texas Election Code prescribes the contents of the form for an application to appear on the ballot, and the party

official who receives the application reviews and accepts the application for filing. The State also notes that the party must retain the application for two years after the general election. The State relies upon a 1993 Attorney General Opinion in support of its argument that Siegel's application for a place on the ballot became a governmental record at the time of its execution. *See* Tex. Att'y Gen. LO-93-65, 1993 WL 773334, at *2 (1993) (holding that an application to appear on a party primary ballot filed with the party's county chairman became a governmental record at the time it was executed). At the outset, we note that "opinions issued by the Attorney General, though persuasive, are not binding on the courts of this [S]tate." *Solum Eng'g, Inc. v. Starich*, No. 14-13-00428-CV, 2014 WL 4262175, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, pet. denied) (mem. op.); *see also In re Smith*, 333 S.W.3d 582, 588 (Tex. 2011). In addition, the Attorney General letter opinion upon which the State relies was written before both *Pokladnik* and *Ex parte Graves*. For these reasons, we decline the State's invitation to adopt the Attorney General's reasoning.

The State also relies upon *Morales v. State*, 11 S.W.3d 460 (Tex. App.—El Paso 2000, pet. ref'd). In *Morales*, the defendant was a constable who submitted a petition in lieu of paying a filing fee to the Democratic Party chairperson, and he was charged with tampering with a governmental record when investigation

8

revealed that some of the required signatures on his petition had been forged. *Id.* at 462. However, Morales was not charged under section 37.10(a)(1) of the Penal Code; rather, he was charged under section 37.10(a)(5) of the Texas Penal Code, which states that a person commits an offense if he "'makes, presents, or uses a governmental record with knowledge of its falsity.'" *Id.* at 463. The *Morales* court relied upon the term "uses" in the section 37.10(a)(5) in determining that the party chairman "was required to accept the petition[,] at which time it became a governmental record[,]" and Morales used the petition to fraudulently induce the chairman to place Morales's name on the ballot. *Id.* at 463. Because Morales was charged under section 37.10(a)(5) of the Texas Penal Code, we conclude that the holding in *Morales* is inapposite to this case. *See id.* The Court of Criminal Appeals parsed the provisions of section 37.10 in like manner in *State v. Vasilas*, 187 S.W.3d 486, 491 (Tex. Crim. App. 2006).

We conclude that when Siegel made the entry about her length of residency, her application was not a governmental record. *See Graves*, 436 S.W.3d at 396-99; *Pokladnik*, 876 S.W.2d at 527-28. As the *Pokladnik* court noted, "'we need not decide whether any other offense was proved, because no other offense was charged.'" *Pokladnik*, 876 S.W.2d at 527 (quoting *Constructors Unlimited*, 717 S.W.2d at 174); *see also generally* Tex. Penal Code Ann. § 37.10(a)(2) (A person

9

commits the offense of tampering with a governmental record if she "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record[.]"). Because the evidence was legally insufficient to prove that the application was a governmental record when Siegel made the false entry, we must reverse the trial court's judgment of conviction and render a judgment of acquittal.

REVERSED AND RENDERED.

_____
CHARLES KREGER
Justice

Submitted on April 9, 2015
Opinion Delivered June 24, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.