IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0351-05
 





THE STATE OF TEXAS



v.



JAMES VASILAS, Appellee





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


COLLIN COUNTY





 Meyers, J., delivered the opinion of the unanimous Court.


O P I N I O N 


 We granted the State's petition for discretionary review to decide whether a
petition for expunction qualifies as a "governmental record" under section 37.01 of the
Texas Penal Code. One definition of a governmental record is "anything belonging to,
received by, or kept by government for information, including a court record." Tex.
Penal Code Ann. § 37.01(2)(A) (Vernon Supp. 2004-2005). The definition of a court
record is "a decree, judgment, order, subpoena, warrant, minutes, or other document
issued by a court." Tex. Penal Code Ann. § 37.01(1) (Vernon Supp. 2004-2005). We
will resolve whether pleadings filed with but not issued by a court fall within the
definition of a governmental record pursuant to § 37.01(2)(A).

Facts

 Appellee, James Vasilas, is an attorney whose client was charged with the state jail
felony of delivery of marijuana. Appellee's client was convicted of the lesser-included
offense of possession of marijuana. Thereafter, Appellee signed and filed a petition of
expunction of the records relating to his client's arrest on the delivery charge. The State
then charged Appellee in a four-count indictment of tampering with a governmental
record pursuant to Tex. Penal Code § 37.10, alleging that he made three false entries in
the petition for expunction. Appellee filed a nonsuit of the expunction lawsuit.

 Subsequently, Appellee filed a motion to quash the indictment on two grounds. 
First, he asserted that § 37.10 of the Texas Penal Code and Texas Rule of Civil Procedure
13 (1) were in pari materia, with Rule 13 controlling over § 37.10. Second, he claimed that
pleadings in civil suits were not governmental records under the definition of §
37.01(2)(A). After hearing oral argument, the trial court granted the motion to quash
without filing findings of fact or conclusions of law. The State timely filed its notice of
appeal.

 Because the State did not appeal the trial court's granting of the motion to quash
the first three counts of the indictment, the sole issue before the court of appeals was
whether the trial court erred in granting the motion to quash Count IV, which alleged that
Appellee did "with intent to defraud and harm another, namely, the State of Texas, make,
present, and use a governmental record, to wit: a Petition for Expunction of Records, with
knowledge of its falsity." (2) The court of appeals affirmed the trial court, holding that "the
petition for expunction filed by appellee was not a governmental record within the
meaning of chapter 37 of the penal code." State v. Vasilas, 153 S.W.3d 725, at *5 (Tex.
App.-Dallas 2005, pet. granted). The court of appeals reasoned that by including a court
record in the definition of a governmental record, the legislature meant to exclude every
type of court document that was not a court record. Since the definition of a court record
under the Texas Penal Code is a document issued by a court, the court of appeals
concluded that a pleading, such as a petition for expunction, which is created by a party or
attorney and merely filed with a court, cannot be a governmental record. Having resolved
this issue against the State, the court of appeals did not address whether Tex. Penal
Code § 37.10 and Rule 13 were in pari materia.

Issue Presented

 The State argues that "under the plain language of the statutory definition of
'governmental record,' which encompasses anything received by a court for information,
a petition for expunction can be a governmental record even though it is filed with, not
issued by, a court." The State asserts that the court of appeals' interpretation of the
definition of a governmental record violates section 311.005(13) of the Texas
Government Code, commonly referred to as the Code Construction Act, which defines
"including" as a term of enlargement and not of limitation. Furthermore, the State
submits that the court of appeals should not have looked beyond the plain language of the
statute to its legislative history in discerning the meaning of a governmental record, and
that it erred by misinterpreting the legislature's intent in amending the definition of
governmental record in 1997 to include a court record. (3) While Appellee concedes that the
word "including" is not itself a term of limitation, he argues that a petition for expunction
does not qualify as a governmental record because: 1) the words "for information" in §
37.01(2)(A) exclude documents that seek to destroy information; 2) the legislature did not
explicitly include pleadings within the definition of a governmental record; and 3) the
petition for expunction was not a governmental record when the false entries were made. 
Although Appellee also advances the argument that § 37.10 and Rule 13 of the Texas
Rules of Civil Procedure are in pari materia, the court of appeals did not reach this issue,
and it is not the issue for which we granted review. We will reverse the court of appeals'
decision.

Analysis

 The resolution of this case depends on the meaning of the word "including" in the
definition of "governmental record" in § 37.01(2)(A). The construction to be given a
statute is a question of law. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.
1989). In our leading statutory interpretation case, Boykin v. State, 818 S.W.2d 782 (Tex.
Crim. App. 1991), we explained that courts must begin with the plain language of a
statute in order to discern its meaning. This is because the court's interpretation of
statutes must "seek to effectuate the 'collective' intent or purpose of the legislators who
enacted the legislation." Id. at 785 (citing Camacho v. State, 765 S.W.2d 431 (Tex. Crim.
App. 1989)). In Boykin, we established that if the literal text of the statute was clear and
unambiguous, we would ordinarily give effect to that plain meaning. 818 S.W.2d at 785
(citing Smith v. State, 789 S.W.2d 590, 592 (Tex. Crim. App. 1990)). However, we also
held: 

 If the plain language of a statute would lead to absurd results, or if the
language is not plain but rather ambiguous, then and only then, out of
absolute necessity, is it constitutionally permissible for a court to consider,
in arriving at a sensible interpretation, such extratextual factors as executive
or administrative interpretations of the statute or legislative history. 

Id. at 785-86. The seminal rule of statutory construction is to presume that the legislature
meant what it said. Seals v. State, 187 S.W.3d 417, 421 (Tex. Crim. App. 2005). In
adhering to this rule, we show our respect for the legislature and recognize that if it
enacted into law something different from what it intended, it would amend the statute to
conform to its intent. Getts v. State, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005) (citing
Lamie v. U.S. Trustee, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004)
("It is beyond our province to rescue Congress from its drafting errors, and to provide for
what we might think . . . is the preferred result.")).

 The legislature has provided the Code Construction Act to assist in statutory
interpretation. It instructs that "words or phrases that have acquired a technical or
particular meaning, whether by legislative definition or otherwise, shall be construed
accordingly." Tex. Gov't. Code Ann. § 311.011(b) (Vernon 2005). In § 311.005(13) of
the Code Construction Act, the legislature expressly stated its intent regarding its use of
the word "including" in statutory provisions, providing: "'Includes' and 'including' are
terms of enlargement and not of limitation or exclusive enumeration, and use of the terms
does not create a presumption that components not expressed are excluded." Tex. Gov't.
Code Ann. § 311.005(13) (Vernon 2005). This Court relied on § 311.005(13) in
interpreting the statutory meaning of "including" in Grunsfeld v. State, 843 S.W.2d 521
(Tex. Crim. App. 1992) (plurality opinion), superseded by statute, Tex. Code Crim.
Proc. art. 37.07(3)(a) (Vernon Supp. 1994). Pursuant to § 311.005(13), we established
that the list following "including" in Article 37.07(3)(a) of the Texas Code of Criminal
Procedure (4) was not exclusive as to the evidence admissible at the sentencing phase of
trial, as long as it was relevant to sentencing. Grunsfeld, 843 S.W.2d at 525 (explaining
that the legislature's use of the term "including" in amending Article 37.07(3)(a) rendered
the list following it nonexclusive); see also Beasley v. State, 902 S.W.2d at 456-57
(holding that evidence concerning the activities of a gang, to which the appellant
belonged, was admissible under Article 37.07(3)(a) because matters relevant to
sentencing were not limited to "the prior criminal record of the defendant, his general
reputation and his character"). (5)

 The lower courts have also interpreted the legislature's use of the word
"including" as a means of illustration and not exclusion. For instance, in Leach v. State,
the court of appeals applied § 311.005(13) to the defendant's community supervision
condition, which tracked statutory language in the Texas Code of Criminal Procedure,
and held that the word "including" did not "creat[e] a presumption against further
inclusion of terms not expressly stated." 170 S.W.3d 669, 673 (Tex. App.-Fort Worth
2005, pet. ref'd) (holding that because "including" was a term of enlargement, the
defendant had violated his community supervision by going within 1000 feet of a grassy
area where children played, even though this location was not specified in the list of
prohibited premises). Similarly, in Wilburn v. State, the court of appeals relied on §
311.005(13) to reject the appellant's argument that, by specifically including franchise
taxes in the Franchise Tax Act, the legislature had intended to exclude directors' and
officers' liability for all other taxes. 824 S.W.2d 755 (Tex. App.-Austin 1992, no pet.). 
In H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., this same court of appeals
reasoned that the Railroad Commission of Texas's use of the word "including" in a notice
provision did not create an exclusive list of interests entitled to notice. 36 S.W.3d 597
(Tex. App.-Austin 2000, pet. denied). In fact, citing § 311.005(13), the court of appeals
stated that "the Commission's use of the word 'include' in the provision signified that the
list is not exclusive." Id. at 603 (emphasis added).

 Both this Court and the lower courts of appeals have construed "including" as a
term of enlargement in accordance with the legislature's intention. By employing the
word "including" to illustrate an example of a governmental record, the legislature did not
by its plain language intend to exclude documents that were filed with the court from the
definition of § 37.01(2)(A). In spite of the fact that the word "including" is unambiguous
and the legislature has assigned it a particular meaning of enlargement, Appellee argues
that the definition of a governmental record still excludes the petition for expunction at
issue. 

 First, Appellee claims that the legislature would have included pleadings in the
express language of § 37.01(2)(A), if it had intended them to be governmental records. 
We have already explained that the legislature's decision to name a court record as an
example of a governmental record does not narrow what qualifies as a governmental
record. Furthermore, we agree with the State that "it is difficult to see how the legislature
would have to make any additions to the definition of governmental record for the current
word 'anything' to include a pleading." (6) Second, Appellee contends that the phrase "for
information" in the definition of governmental record operates to exclude the petition for
expunction because it seeks to destroy other governmental records. Just because the
filing of a petition for expunction may result in the destruction of certain records does not
take away from the fact that the petition gives the government information about which
records the petitioner wants to expunge. Third, Appellee contends that the petition for
expunction is not a governmental record because it had not been received by the
government when the false entries were made. See Pokladnik v. State, 876 S.W.2d 525
(Tex. App.-Dallas 1994, no pet.); Constructors Unlimited v. State, 717 S.W.2d 169 (Tex.
App.-Houston [1st Dist.] 1986, pet. ref'd). Appellee's argument is misplaced because he
relies on cases in which defendants were charged under § 37.10(a)(1), which requires
knowingly making a false entry in, or false alteration of, a governmental record, and not
under § 37.10(a)(5), which requires making, presenting, or using a governmental record
with knowledge of its falsity. Although the petition for expunction was not a
governmental record when Appellee prepared it, it became a governmental record once
the court received it and he used it in seeking to obtain the expunction of records. See
Morales v. State, 11 S.W.3d 460 (Tex. App.-El Paso 2000, pet. ref'd) (holding that even
if a petition containing signatures for placement on the ballot was not a governmental
record when it was falsified, it became a governmental record after it was accepted by the
party chairperson and the candidate relied on it to maintain his position on the ballot). 
We conclude that the legislature's definition of a governmental record is clear and
unambiguous and may include a court record, such as the petition for expunction at issue.

 Having established that the clear and unambiguous language of § 37.01(2)(A) does
not exclude pleadings, such as a petition for expunction, from the definition of a
governmental record, it is necessary to determine whether bringing the petition for
expunction within the language of the statute would lead to an "absurd result that the
legislature could not possibly have intended." Getts, 155 S.W.3d at 155 (citing Boykin,
818 S.W.2d at 785-86). Relying on § 311.021(5) of the Code Construction Act for the
proposition that in enacting a statute, there is a presumption that public interest is favored
over any private interest, Appellee describes the allegedly falsified petition for expunction
as a mistaken pleading, the prosecution of which "would have a chilling effect upon our
system of jurisprudence." He characterizes the result of including pleadings in the
definition of a governmental record as: "the State's orwellian [sic] persecution of lawyers
by attempting to deprive counselors licensed by the Supreme Court of Texas of their
ability to earn a living practicing before our courts." Clearly, Appellee misses the point
of § 37.10, which does not effectively disbar attorneys, but makes them criminally liable
if they tamper with a governmental record. While § 37.10(a)(5) makes it an offense to
make, present, or use a governmental record with knowledge of its falsity, § 37.10(a)(3)
makes it an offense to intentionally destroy, conceal, remove, or impair a governmental
record, which is effectively what the falsified petition for expunction was attempting to
do. There is nothing absurd about the legislature seeking to prohibit these acts with
respect to a petition for expunction or other pleadings, and these prohibitions do not
preclude effective lawyering, as Appellee suggests, by forbidding attorneys from entering
alternative pleadings. Tampering with a governmental record pursuant to the definitions
of §§ 37.10(a)(3) and 37.10(a)(5) is very different from advocating a client's interests by
advancing different legal theories which have bases in the facts and the law. 

 Furthermore, we have not often considered the issue of what constitutes a
governmental record, but our caselaw indicates that there is nothing unique about a
petition for expunction such that the legislature would seek to treat it differently from all
the other records that would fall within its scope. For instance, applications for
government benefits, such as the one in State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App.
1999), clearly qualify as governmental records. It is not at all absurd for the legislature to
include pleadings within the meaning of a governmental record pursuant to § 37.10(a)(5). 
The legislature obviously meant to protect the people of the State by making it a crime to
tamper with governmental records. By enacting § 37.10, the legislature intended to
prevent a multitude of harms, including the destruction of governmental records, the
perpetration of a fraud upon the court, and the miscarriage of justice that could result
from the use of falsified records. There is nothing absurd about the legislature
criminalizing such conduct. 

Conclusion

 Because the legislature's definition of a governmental record is clear and
unambiguous, and including pleadings in this definition does not lead to an absurd result,
it is unnecessary to examine the legislature's intent in amending the definition of a
governmental record in 1997. The court of appeals erred in undertaking such an analysis. 
We reverse the decision of the court of appeals and remand the case for consideration of
the second ground for review.

 Meyers, J.

Delivered: March 22, 2006

Publish


1. Rule 13 of the Texas Rules of Civil Procedure is entitled "Effect of Signing of Pleadings,
Motions and Other Papers; Sanctions."
2. Section 37.10(a)(5) provides that a person commits the offense of tampering with a
governmental record if he "makes, presents, or uses a governmental record with knowledge of its
falsity." Tex. Penal Code Ann. § 37.10(a)(5) (Vernon Supp. 2004-2005). Pursuant to §
37.10(c)(1), this offense is "a Class A misdemeanor unless the actor's intent is to defraud or
harm another, in which event the offense is a state jail felony." Tex. Penal Code Ann. §
37.10(c)(1) (Vernon Supp. 2004-2005).
3. In 1997, the legislature amended § 37.01 by adding the phrase "including a court record"
to the definition of "governmental record" in what had previously been § 37.01(1)(A). The
legislature moved the definition of governmental record from subsection (1) to subsection (2) and
added a definition of a "court record" in § 37.01(1). See Tex. Penal Code Ann. § 37.01
(Vernon Supp. 1998).
4. At the time we decided Grunsfield, Article 37.07(3)(a) provided that "regardless of the
plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted
by the Rules of Evidence, be offered by the state and the defendant as to any matter the court
deems relevant to sentencing, including the prior criminal record of the defendant, his general
reputation and his character." Tex. Code Crim. Proc. art. 37.07(3)(a) (Vernon Supp. 1991)
(emphasis added). Subsequent to our decision in Grunsfeld, the legislature amended the
language of § 37.07(3)(a) to clarify that evidence of unadjudicated extraneous offenses and prior
bad acts were admissible at punishment. See Tex. Code Crim. Proc. art. 37.07(3)(a) (Vernon
Supp. 1994); Beasley v. State, 902 S.W.2d 452, 457 (Tex. Crim. App. 1995) (plurality opinion)
(McCormick, P.J., concurring).
5. Although we decided Beasley in 1995, we relied on the earlier version of Article
37.07(3)(a), which we interpreted in Grunsfeld and which was in effect when the appellant had
committed his offense.
6. The State first advanced this argument in its brief to the Fifth Court of Appeals.