In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00414-CR
NO. 09-14-00415-CR
NO. 09-14-00416-CR
NO. 09-14-00417-CR
NO. 09-14-00418-CR

_____

CHRISTOPHER LEE SUTTON, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 13-02-01974 CR (Counts I-V)**

## OPINION

A jury convicted Christopher Lee Sutton of five counts of improper relationship between educator and student. In two appellate issues, Sutton challenges the legal sufficiency of the evidence and the constitutionality of section 21.12 of the Texas Penal Code. We reverse the trial court's judgment and render a judgment of acquittal.

Legal Sufficiency

In issue one, Sutton contends that the evidence is legally insufficient to support his conviction for improper relationship between educator and student. Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

A school employee commits an offense when he "engages in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school *at which the employee works*[.]" Tex. Penal Code Ann. § 21.12(a)(1) (West Supp. 2014) (emphasis added). "The prohibitions of section 21.12 are clear and unequivocal: if you are an employee of a Texas public or private primary or secondary school, you must not engage in sexual conduct with students who are enrolled at a school where you work[.]" *Ex parte Morales*, 212 S.W.3d 483, 499 (Tex. App.—Austin 2006, pet. ref'd). Teachers and other school employees "occupy positions of public trust with respect

to the students enrolled at their school." *Id*. at 497. Section 21.12 is "limited specifically to employee sexual conduct with students enrolled at the same school where the employee works, a class of persons uniquely within the proximity and influence of the employee." *Id*. at 496. The indictment in this case alleged that Sutton was an employee of Caney Creek High School when he engaged in sexual contact or deviant sexual intercourse with G.T., a person enrolled at Caney Creek. On appeal, however, Sutton, contends that he was employed by Conroe Independent School District ("C.I.S.D.") Police Department, and not Caney Creek, and that he never worked at Caney Creek.

According to the evidence presented at trial, Sutton was employed by C.I.S.D. Police Department. G.T. testified that, two weeks before his eighteenth birthday, he began having a sexual relationship with Sutton. G.T.'s mother testified that Sutton admitted to her that he had a sexual relationship with G.T. William Harness, the Chief of Police for C.I.S.D. Police Department, testified that Sutton contacted him and admitted having an inappropriate relationship with G.T. while G.T. was a student at Caney Creek.

Carrie Galatas, the custodian of records for C.I.S.D., testified that Sutton was employed by C.I.S.D., but was not an employee of Caney Creek. G.T. testified that Sutton sometimes picked him up at the high school when Sutton was off duty,

although Sutton may have been on call. G.T. testified that Sutton did not work for Caney Creek and he never saw Sutton working at the high school. Galatas explained that the school district is divided into five feeder systems and a sergeant is in charge of each feeder. Sutton was assigned to The Woodlands feeder system and was not assigned to either Caney Creek or to the feeder system in which Caney Creek was located. All sergeants, including Sutton, office at the C.I.S.D. Police Department command center. Harness explained that sergeants were not bound to their assigned feeder, but were expected to respond to other feeders if needed, served as after hours and weekend on-call sergeant on a rotating basis, and had "overlapping responsibilities."

Harness testified that Sutton owed a duty to all the schools within C.I.S.D. Mary Bice, an officer with the C.I.S.D. Police Department, testified that she considers herself to be an employee of C.I.S.D., but that she has a duty to all students in the district. Harness explained that the supervising sergeants, like Sutton, were responsible for assisting officers outside their assigned feeders and that there must have been a time when Sutton worked at one of the Caney Creek campuses. He testified that Sutton must have gone to Caney Creek High School because Sutton mentored Kimberly Grimes, the sergeant assigned to the Caney Creek feeder. According to Harness, Sutton sometimes had to cover for Grimes.

4

Harness and Bice testified that Sutton also supervised various school programs made available to students in the district, including G.T. who joined these programs. Bice testified that during a trip for one of the programs, G.T. stayed in Sutton's hotel room.

On appeal, the State contends that the evidence supports Sutton's conviction because Sutton's duties extended to Caney Creek, Sutton was involved in student programs in which G.T. participated, Sutton was present at Caney Creek to pick up G.T. and to meet with Grimes or cover for Grimes, and Harness testified that Sutton must have worked at one of the Caney Creek campuses at some point. However, based on the statute's plain language, section 21.12(a)(1) is limited to an employee's sexual conduct with a student *enrolled at the school where the employee works*. *See* Tex. Penal Code Ann. § 21.12(a)(1); *see also Morales*, 212 S.W.3d at 499. The record demonstrates that Sutton was an employee of C.I.S.D. Police Department. It is undisputed that the CISD Police Department offices are not located at Caney Creek. Although the jury may draw reasonable conclusions and inferences from the evidence, the record does not contain legally sufficient evidence to allow the jury to reasonably conclude that Sutton worked at Caney Creek High School.

Further, the Legislature added a class of school district employees who would be in violation of this statute regardless of whether or not they worked at the school where the student was enrolled. Tex. Penal Code Ann. § 21.12(a)(2). The State did not charge Sutton under this portion of the statute, because the Legislaure did not include police officers in this class. Accordingly, we conclude that the evidence is legally insufficient to support Sutton's conviction for improper relationship between educator and student. *See Jackson*, 443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13. Because no other offense was charged, we need not determine whether another offense was proved. *See Pokladnik v. State*, 876 S.W.2d 525, 527 (Tex. App.—Dallas 1994, no pet.). We sustain issue one and need not address issue two. *See* Tex. R. App. P. 47.1. We reverse the trial court's judgment and render a judgment of acquittal.

REVERSED AND RENDERED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 7, 2015
Opinion Delivered July 15, 2015
Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

DISSENTING OPINION

The majority opinion concludes that "the record does not contain legally sufficient evidence to allow the jury to reasonably conclude that Sutton worked at Caney Creek High School . . . ," and that the evidence is legally insufficient to support Sutton's conviction. I must respectfully disagree.

Based on the record, I conclude that the evidence is legally sufficient to support Sutton's conviction for engaging in an offense as described in section 21.12(a)(1) of the Penal Code. *See* Tex. Penal Code Ann. § 21.12(a)(1) (West Supp. 2014). The jury could have drawn reasonable conclusions and inferences from the evidence to reasonably conclude beyond a reasonable doubt that Sutton's work as a Sergeant with the Conroe Independent School District (C.I.S.D.) police department extended to Caney Creek High School, even though his physical office may have been located elsewhere in the district.

Sutton initially argues on appeal that section 21.12(a)(1) does not apply to him because he was not an "employee" of the school where the student was enrolled.[1] The majority does not specifically address this argument presumably because it concludes the evidence is legally insufficient for the jury to reasonably

---

[1]Sutton does not dispute the fact that he had a sexual relationship with G.T. while G.T. was enrolled as a student at Caney Creek High School, a school that is within the jurisdiction of the C.I.S.D.

conclude that Sutton worked at Caney Creek High School. Section 21.12(a)(1) prohibits an "employee of a public or private primary or secondary school" from engaging in sexual contact, sexual intercourse, or deviate sexual intercourse with a person enrolled in a school at which the employee works. Section 21.12(a)(1) does not define the word "employee." The legislature expressly states that the statutory provision in question applies to an "employee of a public or private" school. Sutton concedes on appeal that he "was officially employed by CISD not by any particular school," and he agrees that all other public school employees in Texas would be employed by school districts and not individual schools. Because public school employees are employees of the particular school districts where they work, in order for subpart (a)(1) of the statute to mean what it says, i.e., that it applies to an employee of a public school, the statute must also necessarily include employees of public school districts.

Undefined terms in a statute are typically given their ordinary meaning, unless a different definition is apparent from the term's use in the context of the statute. *See* Tex. Gov't Code Ann. § 311.011 (West 2013); *In re Shaw*, 204 S.W.3d 9, 16 (Tex. App.—Texarkana 2006, pet. ref'd). Jurors may "'freely read [undefined] statutory language to have any meaning which is acceptable in common parlance.'" *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012)

2

(alteration in original) (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). While we apply the "plain language" of a statute, we must examine the context within which the words are used. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. Tex. Gov't Code Ann. § 312.005 (West 2013). We may consider how a particular interpretation would lead to consequences that the legislature in the context in question could not possibly have intended. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

It is apparent from the term "employee" as used in the context of the statute in question, that the legislature intended section 21.12(a)(1) to govern public *school* employees. To read the word "employee" as requiring the State to prove that the "employee" was officially employed by a school, rather than the school district where the employee works, would be directly contrary to the inclusion of "public schools" within subpart (a)(1), and it would mean that subpart (a)(1) would never apply to any teachers, educators, or other employees who work in any of the hundreds of public schools and school districts across the State of Texas, because they are officially employed by the school districts rather than the schools where they work. Therefore, I conclude that section 21.12(a)(1) applies to Sutton, a public school employee who was officially employed by the school district. *See*

3

Tex. Penal Code Ann. § 21.12(a)(1); *see generally Ex parte Guerrero*, No. 05-06-01316-CR, 2006 Tex. App. LEXIS10780, at *8 (Tex. App.—Dallas Dec. 19, 2006, pet. ref'd) (not designated for publication) (Section 21.12 is not impermissibly vague for failing to define "employee" or "student" and the words are given their plain, ordinary meaning).

Sutton also argues that the evidence is legally insufficient for the jury to reasonably conclude that he worked at Caney Creek High School. When assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine based on that evidence and reasonable inferences therefrom, whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

It is undisputed on appeal that at the time of the offenses in question that Sutton was a Sergeant with the C.I.S.D. police department. According to the Chief of the C.I.S.D. police department, Sergeants in the C.I.S.D.'s police department work on a district-wide basis at the schools within the district. Sutton worked with

G.T.'s mother at the C.I.S.D. police department, and Sutton was a like a "mentor" to G.T. In August of 2012, when G.T. was seventeen and enrolled as a student at Caney Creek High School, Sutton contacted G.T. on a mobile phone messaging service.[2] At first, G.T. did not know the person that had initiated the contact was Sutton, but Sutton could see a picture of G.T. that G.T. had posted on the mobile messaging site. Through the use of "the guessing game," G.T. confirmed that the person who contacted G.T. was Sutton, and later that same month Sutton and G.T. began to meet for sexual encounters.

> Q. [State's Counsel]: Okay. And how would this work? I mean, what would he -- how would you get together?
> A. [G.T.]: I would ask my mom if Chris could take me home because -- I mean, he just happened to be around the area and she would just say, yeah. You know . . .
> Q. Okay.
> A. He could take me home.
> Q. Take you home from school?
> A. From school. G.T. testified that Sutton picked G.T. up from school while Sutton was using a C.I.S.D. vehicle and while Sutton was in uniform, that Sutton drove G.T. home, and that Sutton had sexual contact with G.T.[3]

---

[2]G.T. described the mobile phone messaging service as an application for cell phones for people "who are looking either to date someone, hook up with someone or you know be friends."

[3]G.T. testified about the sexual encounters with Sutton. G.T. also recalled an occasion when G.T. and Sutton went on a "school trip" to San Antonio for Kid

The jury could have reasonably concluded from the evidence that Sutton, as a Sergeant with the C.I.S.D. police department, held a position of authority over students in the School District, including students at Caney Creek High School. Sutton was personally involved with two district-wide C.I.S.D. extracurricular programs and he worked with G.T. and other students in those programs. Sutton was the coordinator-in-charge of Kid Chat, a crime stoppers program in which Sutton worked with G.T. and other students from across the district to provide rewards for tips provided by students regarding criminal activity on school campuses:

> Q. [State's Counsel]: . . . Can you tell us a little bit about what Kid Chat is?
> A. [G.T.]: Yes. It is an organization where kids in the school district meet and we get these -- I guess, what they're called is bids. And where -- I guess, Chris [Sutton] came to us with these bids. And it's usually kids -- anonymous kids calling in about, you know, either drugs they've seen in school and drugs being sold in school or other things that are happening in school that can be, I guess, rewarded with money because it will help the police department find these people and stop whatever is happening. I guess, the drugs or you know whatever -- whatever other illegal acts are happening.
> Q. So, it's kind of a tip line?
> A. Yes.
> Q. Student [sic] would come with information?
> A. Yes.
> Q. And who was in charge of Kid Chat? Who ran it?

Chat, and G.T. stayed in a hotel room with Sutton. G.T. denied that any sexual activity occurred during that trip.

A. Chris [Sutton].
Q. All right. So, would students from Caney Creek be involved with that?
A. Yes. Students from all around the school district.

Sutton was also involved with the Junior Leadership Program comprised of high school students identified as "Junior Leaders." While G.T. was enrolled at Caney Creek High School, G.T. was a participant in both programs.

G.T.'s mother learned about Sutton's relationship with G.T. from G.T.'s boyfriend, who had discovered old messages from Sutton on G.T.'s cell phone. Exhibits depicting certain cell phone records and several text messages were introduced into evidence without any objection from Sutton. According to a text message dated February 14, 2013, G.T.'s boyfriend sent G.T.'s mother a text stating that G.T. "had an affair with Chris Sutton during [G.T.'s] High[]School years. And again on February 8th. Check [G.T.'s] IPod when [G.T.] gets home. I'm done with [G.T.]." A series of text messages followed, and on February 15, 2013, G.T.'s boyfriend sent another message to G.T's mother stating that Sutton was "at Caney Creek" when the boyfriend dropped G.T. off at school.

G.T.'s mother confronted Sutton about the allegations. Sutton admitted to G.T.'s mother that Sutton had an "inappropriate relationship" and that he was "sexually active" with G.T. G.T.'s mother met with Sutton and with Sutton's wife to discuss the matter further. G.T.'s mother testified that she believed the

relationship between Sutton and G.T. was against the law because at the time G.T. was still a student and Sutton was an employee of C.I.S.D. Sutton resigned from the C.I.S.D. police department. Chief Harness, the Chief over the C.I.S.D. police department, testified that when Sutton resigned from the police department, Sutton expressed that his primary concerns were for his family and "staying out of prison."

Harness further explained to the jury that the C.I.S.D. police patrolled and responded to calls across the entire school district. Harness testified that Sergeants had "overlapping responsibilities," and the Sergeants were always "on-call." Harness described the C.I.S.D. police department as a "24/7" operation; the officers work during school hours, as well as during nights and weekends, across the entire district.

> Q. [State's counsel]: And they would be expected to respond to the entire district?
> A. [Harness]: Yes, ma'am.
> Q. So, do your sergeants have the duty only to their feeder zone?
> A. No, ma'am.
> Q. Okay. Do your sergeants have a duty to all of the schools in the Conroe Independent School District?
> A. Yes, ma'am.

Although on paper Sutton was assigned to the Woodlands Feeder Zone and he was not assigned directly to Caney Creek High School, the Chief stated specifically that he knew Sutton's work included coverage at Caney Creek High School.

Q. [State's Attorney]: Did the defendant ever go to Caney Creek High School?

A. [Chief Harness]: Yes, I know he did.

Q. Okay. And how do you know that?

A. There's assignments to Caney Creek High School. The sergeant that was assigned there, he mentored --

Q. And who was the --

A. It was Sergeant Grimes.

Q. Okay. And can you say her full name?

A. Kimberly Grimes.

Q. And the defendant mentored Kimberly Grimes?

A. Yes.

Q. And --

A. All the sergeants would be expected to go assist another sergeant.

Q. Okay. Now, I want to back up. Sergeant Kimberly Grimes[,] she was the sergeant that was in charge of what feeder?

A. At that particular time, Caney Creek.

Q. Okay. And the Caney Creek feeder would include Caney Creek High School?

A. Yes, ma'am.

Q. Now, to your knowledge, did the defendant and Sergeant Grimes have a personal relationship?

A. Yes.

Q. Okay. And did the defendant have to cover for Sergeant Kim Grimes on more than one occasion?

A. Yes.

In a jury trial, the jury is the exclusive authority on the credibility of the witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). We give deference to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. A rational trier of fact could have drawn reasonable inferences from

9

the evidence that Sutton worked on a district-wide basis, and that from time to time, he also worked at Caney Creek High School. Considering all of the evidence in a light most favorable to the jury verdict, a rational jury applying the common, ordinary meaning of the undefined terms in section 21.12(a)(1) could conclude, beyond a reasonable doubt, that Sutton was guilty of engaging in an improper relationship as charged in the indictment. Accordingly, I would conclude that the evidence is legally sufficient to support Sutton's conviction.

In Sutton's appellate brief, Sutton also challenges the constitutionality of section 21.12(a)(1), arguing that the statute is unconstitutionally vague as applied to him because he "was not put on notice that his actions were proscribed by this section of the penal code." Because I conclude the evidence is legally sufficient to support the jury's verdict of guilt, I also briefly address Sutton's constitutional challenge.

As a general rule, constitutional challenges to a statute are forfeited by the failure to object at trial. *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995). Issues of procedural default, such as preservation of error, are systemic and must be reviewed by the courts of appeals, even when the issue is not raised by the parties. *Bekendam v. State,* 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). To preserve

error for review, Sutton had to challenge the constitutionality of section 21.12(a)(1) as applied to him in the trial court. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (facial challenge); *Curry*, 910 S.W.2d at 496 (as-applied challenge); *cf.*, *Smith v. State*, Nos. PD-1790-13, PD-1791-13, PD-1792-13, & PD-1793-13, 2015 Tex. Crim. App. LEXIS 707 (Tex. Crim. App. June 24, 2015) (wherein the plurality allowed the appellant to challenge for the first time on appeal in a petition for discretionary review the facial constitutionality of his conviction under Section 33.021(b) because that section of the statute has been declared facially unconstitutional.). No court has declared section 21.12(a)(1) facially unconstitutional, and the record shows that Sutton did not make an "as applied" constitutional challenge to the statute in the trial court. Accordingly, Sutton did not preserve his constitutional challenge for our review, and therefore I would also overrule his second issue.[4]

---

[4]With respect to Sutton's statement that he "could not be put on notice that his conduct was unlawful," it is not a defense to prosecution that the actor was ignorant of the provisions of any law after it has taken effect. Tex. Pen. Code § 8.03(a) (West 2011). Notably, uncontested evidence presented at trial established that Sutton received a copy of the C.I.S.D. employee handbook. The custodian for the school district testified that the handbook contained a written rule that prohibited all school district employees from having any kind of dating or sexual relationship with any students. Therefore, presumably Sutton knew his relationship was expressly prohibited by his employer. Moreover, when Sutton was first confronted about the affair, Sutton admitted to G.T.'s mother that he had an "inappropriate relationship" with G.T., and he then stated to Chief Harness that his primary

Accordingly, I would affirm.

_____
LEANNE JOHNSON
Justice

Dissent Delivered
Date July 15, 2015

---

concerns were for his family and "staying out of prison." Such statements could by implication indicate that Sutton knew his relationship was also in violation of the criminal law. Finally, simply because section 21.12(a)(1) fails to define the word "employee" does not render section 21.12(a)(1) unconstitutionally vague or otherwise fail to put Sutton on notice that his conduct was unlawful. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989); *Guerrero*, 2006 Tex. App. LEXIS 3718339, at *8.