# IN THE FIRST COURT OF APPEALS OF TEXAS

APPEAL FROM THE 183RD DISTRICT COURT OF TEXAS
FOR HARRIS COUNTY
CAUSE NO. 1382166

FILED IN
1st Court of Appeals
HOUSTON, TEXAS
10/8/2015 11:34:15 AM
CHRISTOPHER A. PRINE
Clerk

## Eric Lynn Baumgart
*Appellant*

VERSUS

## The State of Texas
*Appellee*

# APPENDIX A1



**In The**

## Court of Appeals

**For The**

## First District of Texas

———————————

**NO. 01-14-00320-CR**

———————————

**ERIC BAUMGART, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1382166**

## MEMORANDUM OPINION

A jury convicted Eric Baumgart of tampering with a governmental record.[1]

The trial court assessed Baumgart's punishment at two years' incarceration, but

---

[1]  *See* TEX. PENAL CODE ANN. § 37.10(a)(1) (West Supp. 2014).

suspended the sentence and placed him on community supervision for five years. In his sole issue, Baumgart contends that the evidence is insufficient to support his conviction and the jury's implicit rejection of his defense. We affirm.

## Background

Baumgart was employed as a reserve deputy constable for Liberty County, Texas, in 2011. During that time, Baumgart learned that his ex-girlfriend, Ana Johnson, had been involved with other men while they were dating, and that Johnson was wanted for outstanding felony warrants in Travis County, Texas. Baumgart set up a meeting between Johnson and a mutual friend in downtown Houston on September 27, 2011, and when she arrived, Baumgart arrested her on the outstanding warrants. Baumgart went to the Harris County jail the next day and met with Johnson. During that meeting, Baumgart issued Johnson a ticket for driving with an invalid license on August 18, 2011.[2] Baumgart noted the color, make, model, and type of Johnson's vehicle on the ticket (tan 1999 Lexus ES 300), along with the vehicle identification number (VIN). Although Baumgart submitted the ticket to the Liberty County Justice of the Peace Court's clerk for processing, the ticket was never processed or entered into the court's system.[3]

---

[2] The citation also included a warning for littering.

[3] After Harris County officials inquired about the ticket and the purpose of Baumgart's visit to Johnson at the jail, the clerk was instructed to disregard the ticket.

Baumgart subsequently testified before a grand jury about the incident and a portion of his testimony was admitted into evidence during his trial. In his grand jury testimony, Baumgart admitted to "checking in as law enforcement" when he met with Johnson at the jail on September 28th and writing her a ticket "from [the] Liberty County Precinct 4 Constable's Office" during that meeting for driving with an invalid license on August 18th. Although the traffic violation occurred over forty days before he wrote the ticket, Baumgart claimed that he had personal knowledge of the offense because he was riding with Johnson in the Lexus when the violation occurred.

Officials from the Liberty County Constable's Office Precinct 4 testified at trial that the office routinely provided ticket books for deputy constables to use during the course of their official duties and the Precinct 4 Constable identified the ticket Baumgart issued to Johnson as a "Liberty County Constable's Office Precinct 4 citation ticket." Officers issue these tickets in order to inform the driver of the alleged offense and to notify the driver when to appear in court. The pre-printed tickets also contain designated places where the officer can list other information, such as a description of the vehicle, in order to refresh the officer's memory in the event the officer needs to testify in court.

Johnson testified that the Lexus had been purchased for her on September 3, 2011, and that before that time she had been driving "an old, unreliable Ford

Contour." The 1999 Lexus purchased on September 3rd matches the vehicle description Baumgart noted on the ticket, including the VIN.

## Discussion

Baumgart contends that the evidence is insufficient to prove beyond a reasonable doubt that he tampered with a governmental record because the State failed to prove that: (1) the ticket was a governmental record, (2) Baumgart knew the VIN was false, and (3) Johnson suffered expense or delay as a result of the falsified ticket. Baumgart further contends that the evidence is insufficient to support the jury's implicit rejection of his defense that the VIN had no effect on the government's purpose for requiring tickets.

## A.  Applicable Law and Standard of Review

A person commits the offense of tampering with a governmental record if he "knowingly makes a false entry in, or false alteration of, a governmental record." TEX. PENAL CODE ANN. § 37.10(a)(1) (West Supp. 2014). A governmental record is "anything belonging to, received by, or kept by government for information. . . ." *Id.* § 37.01(2)(A). It is a defense to prosecution that the false entry or false information could have no effect on the government's purpose for requiring the governmental record. *Id.* § 37.10(f).

When reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict to determine if any

4

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the State bears the burden to disprove a defense to prosecution by establishing its case beyond a reasonable doubt, we also review sufficiency challenges to a fact finder's rejection of such a defense under the *Jackson* standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 2.03 (governing defenses to prosecution set forth in Penal Code). In doing so, we examine the record for evidence that supports the negative finding. *See Smith*, 355 S.W.3d at 148. If no evidence supports the negative finding, then we examine the entire record to determine whether it establishes the contrary proposition as a matter of law. *Id.*

Under the *Jackson* standard, the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793 (stating that it is fact finder's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams*, 235 S.W.3d at 750. We resolve any inconsistencies in the evidence in

5

favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). The sufficiency of the evidence is measured against a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

**B.      Analysis**

Baumgart argues that the State failed to prove that the ticket was a governmental record because there is no evidence that the ticket was ever received by a government agency or entered into a government record-keeping system.

The evidence at trial established that the Constable's Office purchased and provided ticket books for its deputy constables to use and the Constable identified the ticket Baumgart issued to Johnson as a "Liberty County Constable's Office Precinct 4 citation ticket." Baumgart also admitted that he "checked in as law enforcement" when he met with Johnson at the jail and that the ticket he wrote her during that meeting was "from Liberty County Precinct 4 Constable's Office." The jury could reasonably infer from this evidence that Baumgart was acting in his official capacity as a reserve deputy constable for Liberty County when he issued the ticket to Johnson with the false vehicle description and VIN and that the ticket

6

was written from a ticket book provided to him by the Liberty County Constable's Office. *See Lewis v. State*, 773 S.W.2d 689, 692 (Tex. App.—Corpus Christi 1989, pet. ref'd) (holding arrest warrant was governmental record, in part, because justice of peace was acting in his official capacity when he made false entry on warrant). The jury could also reasonably infer that the ticket, and the ticket book it came from, belonged to the Constable's office. *Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2793 (stating fact finders may "draw reasonable inferences from basic facts to ultimate facts"); *see also* TEX. PENAL CODE ANN. § 37.01(2)(A) (stating governmental record is "anything *belonging to*, received by, or kept by government for information") (emphasis added).

Baumgart relies upon cases that are factually distinguishable because those cases involve privately owned documents created by non-governmental actors, as opposed to a ticket from a government-owned ticket book used by a law enforcement officer acting in his official capacity. *See generally Pokladnik v. State*, 876 S.W.2d 525, 527 (Tex. App.—Dallas 1994, no pet.) (holding that wrecker company's mechanic's-lien affidavits were not governmental records); *Constructors Unlimited Inc. v. State*, 717 S.W.2d 169, 174 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (holding that company's bid sheets were not governmental records).

Baumgart also contends there was insufficient evidence to show that he knowingly entered a false VIN on the ticket. In the portions of his grand jury testimony admitted at trial, Baumgart repeatedly claimed that he had personal knowledge of the traffic violation because he was in the car when the violation occurred. Evidence admitted at trial, however, demonstrates that the 1999 Lexus was not purchased until September 3, 2011—more than two weeks after Johnson was allegedly driving around with Baumgart. Before that time, Johnson had been driving "an old, unreliable Ford Contour." The 1999 Lexus purchased on September 3rd matches the vehicle description Baumgart noted on the ticket, including the VIN. Based on this evidence, a jury could reasonably infer that Baumgart, who insisted that he was with Johnson when the traffic violation allegedly occurred on August 18th, knew that Johnson was not driving the 1999 Lexus at that time, and that the make, model, and VIN he noted on the ticket was incorrect when he wrote the ticket on September 28th. *See Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2793 (stating fact finders may "draw reasonable inferences from basic facts to ultimate facts" and courts defer to fact finder's judgment on conflicts of testimony).

Baumgart further contends that the evidence is insufficient because the State failed to establish that Johnson suffered expense or delay as a result of the ticket, as required by the jury charge. Our review of the sufficiency of the evidence,

8

however, is measured by the elements of the offense as set forth in a hypothetically correct jury charge, not the charge that was actually submitted. *Cada*, 334 S.W.3d at 773 (citing *Malik*, 953 S.W.2d at 240). Baumgart's argument is unavailing because "undue expense and delay" is not an element of the charged offense and would not have been included in the hypothetically correct jury charge for this case. *See id.* (discussing contents of hypothetically correct jury charge*)*; *see generally* TEX. PENAL CODE ANN. § 37.10(a)(1). Accordingly, whether the State provided sufficient evidence that the ticket caused Johnson to incur any undue expense or delay is immaterial for purposes of our sufficiency review.

Finally, Baumgart contends that the State failed to provide sufficient evidence for the jury to reject his defense that the vehicle information "could have no effect on the government's purpose for requiring the governmental record." TEX. PENAL CODE ANN. § 37.10(f). On the contrary, county officials testified that such tickets are intended not only to inform the driver of the violation and to give the driver a court date, but to refresh the officer's memory in the event he testifies at trial regarding the offense. From this evidence, a jury could reasonably infer that providing a space on the ticket form for additional information could serve the government's purpose by making an officer's testimony more detailed and credible. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Moreover, the State only had to demonstrate that the false information *could* have an effect on the

9

government's purpose, and, therefore, the fact that the ticket was never processed and Baumgart would not be required to testify about the ticket is immaterial. *See* TEX. PENAL CODE ANN. § 37.10(f).

After reviewing the evidence in the light most favorable to the verdict and deferring to the fact finder's responsibility to draw reasonable inferences from the evidence, we conclude that a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt and that there is some evidence to support the jury's negative finding on Baumgart's defense. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Smith*, 355 S.W.3d at 148.

We overrule Baumgart's sole issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Keyes, Massengale, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).